914 F.2d 993
 William E. CURRIER and Robert C. Braun, Plaintiffs-Appellants,
v.
Sergeant Charles J. BALDRIDGE, and Corporal Robert D.
Osborn, Police Officers of the New Berlin Police
Department and All Those Acting in
Concert on Conspiracy
Therewith,
Defendants-
Appellees.
 No. 89-2995.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 12, 1990.
Decided Oct. 1, 1990.
Rehearing and Rehearing In Banc
Denied Dec. 4, 1990.
 
 Timothy J. O'Brien, Pangman & Associates, Waukesha, Wis., for plaintiffs-appellants.
 Raymond J. Pollen, Riordan, Crivello, Carlson & Mentkowski, Milwaukee, Wis., for defendants-appellees.
 Before BAUER, Chief Judge, CUMMINGS and WOOD, Jr., Circuit Judges.
 HARLINGTON WOOD, Jr., Circuit Judge.
 
 
 1
 Plaintiffs William E. Currier and Robert C. Braun profess to be members of the American Heritage Forum ("AHF"), an organization apparently dedicated to the propagation of litigation. What the organization's goals are or whether such an organization even exists are matters of some dispute, but at this stage of the litigation, we must draw factual inferences in favor of the plaintiffs. The plaintiffs characterize AHF as a nonviolent affiliation of Christians that desire a return to "America's common law heritage." To throw off the manacles of burdensome governmental regulation, AHF members have refused to register their cars with the state of Wisconsin.
 
 
 2
 AHF member Nancy Knies dutifully refused to register her automobile, and like many who practice civil disobedience, suffered the consequences. In his capacity as a police sergeant for the city of New Berlin, Wisconsin, defendant Charles J. Baldridge arrested Knies and impounded her car. The record becomes unclear, but at some point Knies brought legal proceedings to gain return of her car, naming Baldridge and a Wisconsin judge as defendants.
 
 
 3
 Leaving Knies for the moment, we move to the plight of another AHF member, Al Feustel, on the night of February 19, 1986. Feustel was in court that night, challenging a traffic charge, and a number of AHF members had accompanied him. Among the AHF members present in the courtroom were Knies, plaintiff Currier, and plaintiff Braun. Defendant Baldridge was serving as the courtroom bailiff, and Knies wanted to seize this opportunity to serve him with legal papers connected to her case. The exact content of these papers is unknown but is of little consequence given our disposition of this case.
 
 
 4
 Knies enlisted Currier to serve the papers on Baldridge, and Currier dutifully complied. Currier confronted Baldridge in the courthouse hallway, but Baldridge, aware of AHF members' litigious propensities, wanted nothing to do with him. Undaunted, Currier made a second attempt at service, this time inside the courtroom. Currier approached Baldridge from the rear, struck him with the legal papers, let the papers drop to Baldridge's feet, and declared, "You are served." Baldridge turned around and responded, "You are under arrest."
 
 
 5
 Currier initially darted away from Baldridge, but he quickly changed his mind and submitted to the arrest. The other defendant, police corporal Robert D. Osborn, joined the scene at this moment, assisting Baldridge with Currier's custody. Baldridge and Osborn then moved Currier into a conference room located just off the courtroom. After other officers had joined them, Baldridge and Osborn tried to transport their prisoner to the police station.
 
 
 6
 Baldridge and Osborn did not even get outside of the courtroom before trouble broke out. While being escorted by two other police officers and in front of a number of AHF members, Currier slumped to the courtroom floor with a loud groan. At this point, plaintiff Braun asserted himself, exhorting the officers not to hurt his fellow AHF member. The parties dispute who was the aggressor, but it is undisputed that a fray then ensued, for which Braun was charged with disorderly conduct.
 
 
 7
 For his actions that night, Currier was charged with one count of obstructing a police officer and two counts of disorderly conduct. Currier's disorderly conduct charges stemmed first from his initial actions in striking Baldridge with the legal papers and second from his incitement of the courtroom crowd by dropping to his knees and groaning. Currier was convicted only for the second disorderly conduct count. Braun was also convicted on his disorderly conduct charge.
 
 
 8
 Currier and Braun are now in federal court with this section 1983 action against the police officers responsible for their arrests that night. The district court dismissed all of the plaintiffs' complaint. On appeal, we are left only with Baldridge and Osborn as party defendants and, despite characterizations to the contrary in the plaintiffs' somewhat opaque brief, with only two claims for adjudication. First, the plaintiffs charge a violation of their first amendment rights to free speech, petition, and assembly for the defendants' willful interference with their ability to engage in group litigation. Second, the plaintiffs charge a violation of their fourth amendment rights for wrongful arrest. Of course, both of these rights apply to this case through their incorporation in the fourteenth amendment.
 
 
 9
 As to their first amendment claim, the plaintiffs assert that AHF was using Knies's suit as a vehicle to protest Wisconsin's oppressive automobile registration laws. The Supreme Court has recognized a "common thread running through our decisions ... is that collective activity undertaken to obtain meaningful access to the courts is a fundamental right within the protection of the First Amendment." United Transp. Union v. State Bar, 401 U.S. 576, 585, 91 S.Ct. 1076, 1082, 28 L.Ed.2d 339 (1971). The plaintiffs' attempts to characterize Knies's replevin action as litigation in search of political change devalue the truly important social contexts in which this right has arisen. See, e.g., Brotherhood of R.R. Trainmen v. Virginia, 377 U.S. 1, 84 S.Ct. 1113, 12 L.Ed.2d 89 (1964); NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). Although the first amendment does not place relative values on various groups' ideologies, there are still limits to its guarantees, and the plaintiffs' desire to aid Knies in private litigation for the recovery of her personal automobile may fall outside the scope of the amendment's protections. We need not decide this issue, however, because even if applicable to this case, the plaintiffs have failed to show how the defendants burdened this right.
 
 
 10
 The plaintiffs allege that Baldridge arrested Currier while he was trying to serve legal process on Baldridge, and thus the arrest may appear to have hindered the Knies litigation. Despite Currier's arrest, however, the attempt at process was still effective; for service of process on recalcitrant defendants, Wisconsin accepts the general method of placing a summons in the general vicinity of the person to be served and announcing the nature of the papers. See Borden v. Borden, 63 Wis. 374, 377, 23 N.W. 573, 574 (1885); In re Guardianship of K.N.K., 139 Wis.2d 190, 214-15, 407 N.W.2d 281, 292 (Wis.Ct.App.1987); see also Hatmaker v. Hatmaker, 337 Ill.App. 175, 182, 85 N.E.2d 345, 348 (1949); Union Nat'l Bank v. Pacamor Bearings, Inc., 132 Misc.2d 269, 503 N.Y.S.2d 671, 672 (Sup.Ct.1986); Chernick v. Rodriguez, 2 Misc.2d 891, 150 N.Y.S.2d 149, 150 (Sup.Ct.1956); Flex Credit, Inc. v. Winkowitsch, 428 N.W.2d 236, 239 (N.D.1988); Nielsen v. Braland, 264 Minn. 481, 484, 119 N.W.2d 737, 739 (Minn.1963). Nothing that Baldridge did burdened the ability of the plaintiffs to engage in group litigation. The plaintiffs have not pointed to any obstacles that Currier's arrest placed in the path of their desire to pursue judicial remedies as a means of social change.
 
 
 11
 As an alternative, plaintiffs Braun and Currier might claim that Currier's arrest "chilled" their desire to support AHF's litigation efforts, but this theory is better analyzed under the plaintiffs' fourth amendment claims for wrongful arrest. If the arrests were supported by probable cause, then the plaintiffs have no cause of action, under the first amendment or otherwise.
 
 
 12
 We turn first to Braun's wrongful arrest claim because it is the least complicated. Braun was arrested for and convicted of disorderly conduct for interfering with the police as they led Currier out of the courtroom. The conviction supports the arrest: a plaintiff's previous conviction collaterally estops the plaintiff from reasserting a lack of probable cause. Allen v. McCurry, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). The existence of probable cause bars the section 1983 action. Kompare v. Stein, 801 F.2d 883, 891 (7th Cir.1986).
 
 
 13
 Currier's wrongful arrest claim is more problematic. Currier was initially arrested for his attempt to serve legal papers on officer Baldridge, but Currier was only convicted for his disorderly conduct after his arrest and as he was being led from the courtroom. Thus, Currier was charged with two counts of disorderly conduct, but only convicted of one. Contrary to the defendants' assertion, the conviction does not collaterally estop Currier from asserting the invalidity of his initial arrest.
 
 
 14
 At a preliminary hearing, a Wisconsin state court presumably made a finding that Currier's initial arrest was supported by probable cause. If such a finding was made in the course of Currier's criminal case, it might work a collateral estoppel against him. See Guenther v. Holmgreen, 738 F.2d 879, 883-89 (7th Cir.1984), cert. denied, 469 U.S. 1212, 105 S.Ct. 1182, 84 L.Ed.2d 329 (1985). Nevertheless, the defendants have not chosen this route, instead resting their collateral estoppel argument solely on the effects of Currier's conviction. Collateral estoppel, like a lot of issues in this court, can be waived. See Blonder-Tongue Laboratories v. University of Ill. Found., 402 U.S. 313, 350, 91 S.Ct. 1434, 1453, 28 L.Ed.2d 788 (1971); West Virginia N.R.R. v. United States, 183 Ct.Cl. 232, 391 F.2d 627, 636 (1968). The defendants did not raise the collateral estoppel effects of preliminary proceedings in Currier's criminal case, and neither will we.
 
 
 15
 However, the mere fact that Currier was acquitted of the crime for which he was initially arrested does not lead to section 1983 liability for the arresting officer. See Baker v. McCollan, 443 U.S. 137, 145, 99 S.Ct. 2689, 2694, 61 L.Ed.2d 433 (1979); Pierson v. Ray, 386 U.S. 547, 555, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967). As we noted above, if the arrest was supported by probable cause, then no cause of action will lie. While Currier disputes the exact chain of events that led to his arrest, his claim falls within the language of Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), and Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986). Currier has failed to come forward with sufficient evidence that could support a jury verdict in his favor on an element of his claim for which he would bear the burden of proof at trial. The evidence is undisputed that Currier made physical contact with Baldridge as he attempted to serve the officer with legal papers. Currier quibbles with the defendants' characterization of this contact as a "striking," but any physical contact within a courtroom between a police officer and a private citizen would tend "to cause or provoke a disturbance," as the state of Wisconsin has defined disorderly conduct. WIS.STAT. Sec. 947.01. Because Currier's conduct occurred in the presence of the defendants, they had probable cause to arrest him.
 
 
 16
 The plaintiffs have shown no constitutional right that the defendants violated. Accordingly, the judgment of the district court is
 
 
 17
 AFFIRMED.