**Floyd PATTERSON, Plaintiff,**

v.

**Detective LEYDEN, et al., Defendants.**

**No. 96 C 0967.**

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 4, 1996.

Floyd B. Patterson, Graham—GRM, Graham Correctional Center, Hillsboro, IL, pro se.

Maritza Bonk, City of Chicago, Law Department, John F. McGuire, City of Chicago Law Department, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

Plaintiff Floyd Patterson filed a one-count complaint under 42 U.S.C. § 1983 against Chicago police officers James Leyden and Barrett Moran and the Chicago Police Department, alleging that Leyden and Moran had arrested him without an arrest warrant and searched his apartment and taxicab with-

out a search warrant. Patterson sought leave to proceed in forma pauperis. Leave was granted April 9, 1996 with respect to Leyden and Moran, while the Chicago Police Department was dismissed since it is not a suable entity.

Leyden and Moran have moved to dismiss the complaint. Patterson has sought leave to file an amended complaint adding seven police officer defendants, and his motion was continued pending decision of the motion to dismiss. For the reasons discussed below, Patterson's motion to amend is denied without prejudice, the motion to dismiss is granted in part and denied in part, and this suit is stayed pending the final determination of the validity of Patterson's conviction by the Illinois courts.

### A. Pleading Requirements

Defendants' first objection to the complaint is that it improperly combines multiple claims in a single count; their second is that it violates Rule 8(a) by not providing a "short and plain statement" of Patterson's claims. The court agrees. The defendants are entitled to a reasonably clear statement of what each one is accused of doing and how this is alleged to have violated Patterson's rights.

■ Although Patterson should have received the defendants' motion before he filed his proposed amended complaint, the amended complaint does not cure these defects. The proposed amended complaint has the additional problem that it adds seven new defendants without specifying what each of them did to violate Patterson's rights. Patterson complains of at least three separate actions: an arrest, a search of his apartment and a search of his cab. It is unlikely that all ten officers participated in each. Patterson's motion to file the proposed amended complaint is denied without prejudice to his filing an amended complaint that complies with the Federal Rules.

Because the complaint appears to state a claim, and because it is enough to put the defendants on notice of the nature of the claims asserted—or most of them—the court will not dismiss the complaint on this ground. Nevertheless, defendants' motion to dismiss

the complaint under Rules 8 and 10 will be treated as a motion under Rule 12(e) for a more definite statement, and, as such, it is granted. As will be explained below, this suit will be stayed. Within 45 days after the entry of an order lifting the stay, Patterson must file *either* an explanatory statement, a list of the specific acts each of the two defendants is alleged to have done, with each allegation in a separate numbered paragraph, *or* an amended complaint similarly setting forth this information. An amended complaint, but not an explanatory statement, may include additional defendants. If Patterson fails to do so, the original complaint will be stricken and the suit dismissed as provided in Rule 12(e).

### B. Elements of Patterson's Claims

■ Defendants take the position that the complaint does not set forth the elements of any claim. Federal pleading, of course, does not require that the formal elements of a cause of action be set forth. A motion to dismiss should not be granted unless the court concludes that "no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). In deciding the motion, we must not only assume that the alleged facts are true, we must draw every reasonable inference in the plaintiff's favor. *Bowman v. City of Franklin,* 980 F.2d 1104, 1107 (7th Cir.1992). Nevertheless, "[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery on any legal theory, even though it may not be the theory suggested or intended by the pleader, or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Sutliff v. Donovan Companies, Inc.,* 727 F.2d 648, 654 (7th Cir.1984) (quoting 5 Wright and Miller, Federal Practice and Procedure § 1216 at 121–23 (1969)).

■ Defendants are correct that Patterson has not alleged a claim for forgery under Illinois law. Patterson alleges that Leyden stated at one point that he signed a police report, but later stated that he didn't know

whether he signed it personally, admitting that sometimes his partner "forges" his signature. One person may authorize another to sign a document on his behalf. If his partner signed Leyden's name with his approval, the only reasonable inference here, it would not be forgery.

█ Patterson also cannot recover from either defendant for perjury. Policemen, like other witnesses, have absolute immunity from liability for testimony given in a criminal proceeding. *Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983), held that witnesses have absolute immunity for giving perjured testimony at a criminal trial, and the Seventh Circuit has extended absolute immunity to witnesses testifying at pretrial hearings. *Curtis v. Bembenek,* 48 F.3d 281 (7th Cir.1995).

█ We now come to Patterson's central claims of unlawful search and arrest. Defendants are correct that neither a warrantless arrest nor a warrantless search is necessarily a constitutional violation, but the record discloses the outline of a claim. In reviewing a *pro se* complaint, the court is directed to consider the allegations contained in all documents filed with the court. *Hughes v. Rowe,* 449 U.S. 5, 10 n. 8, 101 S.Ct. 173, 176 n. 8, 66 L.Ed.2d 163 (1980); *Swofford v. Mandrell,* 969 F.2d 547, 549 (7th Cir.1992). Patterson's amended complaint, while unacceptable as a complaint, may be considered in determining whether Patterson has stated a claim. A warrantless search is normally only permissible if consent has been obtained, as an incident to an arrest that is otherwise justified, or when exigent circumstances excuse the warrant requirement. Patterson states in his amended complaint that he was "practically forced" to let the police search his house and cab, negating consent, and it may be reasonably inferred that his arrest was a result of the searches rather than the other way around. Under federal notice pleading, Patterson does not have the burden of pleading the absence of exigent circumstances. He has therefore alleged searches in violation of his Fourth Amendment rights, and, inferring that the search yielded probable cause for his arrest, an unlawful arrest as well.

## EFFECT OF PATTERSON'S CONVICTION

█ Defendants have provided a certified statement by the Clerk of the Circuit Court of Cook County showing that Patterson was convicted of attempted murder and sentenced on December 18, 1995 to 18 years imprisonment. Def.Exh. C. Defendants are correct that the court may take judicial notice of matters of public record in deciding a motion to dismiss without converting it to a motion for summary judgment. *Henson v. CSC Credit Services,* 29 F.3d 280, 284 (7th Cir.1994). According to defendants, Patterson's conviction has two consequences. First, it negates the element of lack of probable cause, foreclosing a claim for an unlawful arrest. Second, under *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), Patterson may not sue unless his conviction has been overturned.

### A. Conviction as Proof of Probable Cause

According to defendants, "it is well established that a plaintiff's criminal conviction bars a suit for false arrest based on a claim that there was no probable cause to arrest the plaintiff." Def.Br. at 5. This states the law a bit broadly. Defendants cite *King v. Goldsmith,* 897 F.2d 885 (7th Cir.1990), appeal after remand, 21 F.3d 430 (7th Cir.1994) (table), cert. denied, — U.S. —, 115 S.Ct. 937, 130 L.Ed.2d 882 (1995), in which the Seventh Circuit noted that there was a common-law rule to that effect. However, the court in *King* did not hold that Illinois follows that rule, and found it unnecessary to decide whether the rule applies to a claim under § 1983 for the federal analog of a false arrest, an arrest in violation of the Fourth Amendment.

█ *King* noted that *Cameron v. Fogarty,* 806 F.2d 380, 386–89 (2d Cir.1986), cert. denied, 481 U.S. 1016, 107 S.Ct. 1894, 95 L.Ed.2d 501 (1987), had applied the common law rule to a suit under § 1983, but that this had been questioned in *Rose v. Bartle,* 871 F.2d 331, 351 (3d Cir.1989). *King,* 897 F.2d at 886. The Sixth, Eighth and Tenth Cir-

cuits have followed *Cameron. Walker v. Schaeffer*, 854 F.2d 138, 143 (6th Cir.1988); *Malady v. Crunk*, 902 F.2d 10, 11 (8th Cir. 1990); *Howard v. Dickerson*, 34 F.3d 978, 981 n. 2 (10th Cir.1994) (apparent approval in dictum). Although recognizing that *King* did not decide the question in this circuit, some judges of this court have followed *Cameron* as well. *See, e.g., Jimmerson v. Campbell*, 1993 WL 479053 (N.D.Ill.) (Marovich, J.). For the reasons that follow, we respectfully disagree.

The Second Circuit in *Cameron* reasoned that § 1983 was enacted against a background of accepted common-law rules of tort liability. The court noted that in *Pierson v. Ray*, 386 U.S. 547, 553–56, 87 S.Ct. 1213, 1217–19, 18 L.Ed.2d 288 (1967), the Supreme Court had reviewed traditional principles with respect to the immunity of judges and law enforcement officials and found that the legislative history of § 1983 gave no clear indication that Congress had intended any wholesale abolition of common-law immunities and concluded that those common-law defenses were available. *Cameron*, 806 F.2d at 386.

At common law, an arrest without probable cause could give rise to an action in tort for false arrest or malicious prosecution. Conviction barred an action for malicious prosecution, since one of the elements of the tort was a termination of the proceedings in the plaintiff's favor. Termination in the plaintiff's favor was not an element of the tort of false arrest. Nevertheless, the plaintiff was required to prove that the arrest had been without probable cause, and the common-law rule was that conviction conclusively established probable cause. Among the authorities cited in *Cameron* was the Restatement (Second) of Torts § 667(1) ("conviction of the accused ... conclusively establishes the existence of probable cause, unless the conviction was obtained by fraud, perjury or other corrupt means"). The court concluded:

> Thus, the common-law rule ... was and is that the plaintiff can under no circumstances recover if he was convicted of the offense for which he was arrested. *Broughton v. State*, 37 N.Y.2d [451] at 458, 373 N.Y.S.2d [87] at 95, 335 N.E.2d [310]

at 315 [ (1975) ]; Harper & James § 4.11, at 345; *id.* § 4.12, at 346. This rule "represents the compromise between two conflicting interests of the highest order—the interest in personal liberty and the interest in apprehension of criminals," *id.* § 3.18, at 275, and constitutes a refusal as a matter of principle to permit any inference that the arrest of a person thereafter adjudged guilty had no reasonable basis. The law enforcement officer is given this protection because he "has a duty to the public to prevent crime and arrest criminals; the performance of these duties would be seriously impaired unless peace officers were given considerable discretion in their performance and protected from liability for the consequences of honest and reasonable mistakes." Restatement § 121, comment g.

*Id.* at 387–88.

This reasoning is questionable as applied to actions under § 1983 as opposed to state-law torts. Whatever an arrestee's common-law right may have been previously, 42 U.S.C. § 1983, originally § 1 of the Civil Rights Act of 1871, was enacted under the Fourteenth Amendment for the purpose of forcing state officers to accord citizens "due process of law," which came to include the guarantees of the Fourth Amendment. "The very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law...." *Mitchum v. Foster*, 407 U.S. 225, 242, 92 S.Ct. 2151, 2162, 32 L.Ed.2d 705 (1972). "Congress clearly conceived that it was altering the relationship between the States and the Nation with respect to the protection of federally created rights; it was concerned that state instrumentalities could not protect those rights; it realized that state officers might, in fact, be antipathetic to the vindication of those rights; and it believed that these failings extended to the state courts." *Id.* Protecting police officers from liability for the consequences of "honest and reasonable mistakes" is a legitimate concern, but the common-law bar by conviction is absolute, not a qualified immunity that looks to

the arresting officer's state of mind. As such it conflicts with the purpose of § 1983.

The court in *Cameron* took the position that the common-law rule does not undermine the statutory goals of granting compensation for the loss of civil rights and deterring public officials from further violations. According to *Cameron,* a conviction means that the plaintiff had no right to avoid arrest, his arrest without probable cause was merely "premature," and that the resulting injury is "insubstantial." Any injury flowing from the use of evidence improperly seized in connection with the arrest would be addressed by the exclusionary rule. On the deterrent side, the exclusionary rule is a sufficient deterrent to arrests lacking probable cause. *Cameron,* 806 F.2d at 388.

Like the court in *Rose v. Bartle,* we question the policy determinations underlying *Cameron. Cameron* noted the deterrent of the exclusionary rule, which threatens to free the suspect if his rights are violated, but overlooked the incentive to wrongdoing provided by a common-law rule that immunizes the arresting officer only if the suspect is convicted. The officer thus has an incentive to shade his testimony not only as to the existence of probable cause but as to guilt as well. The officer's own liability is at least as strong an incentive as the possibility that an offender will go unpunished. We are understandably displeased when a convicted criminal is allowed to bring suit against the protector of society who arrested him. It is intuitively appealing to find that his conviction proves that he had no right to freedom. But we understand the Constitution to accord all citizens certain rights against state officers. At the time of his arrest the convict had the same right as other citizens not to be arrested without probable cause, and it is a questionable rule that would permit this right to be taken away *post hoc.* We therefore decline to follow the rule of *Cameron.*

### B. Collateral Estoppel

Nevertheless, a narrower principle *may* result in Patterson's conviction barring both his claims for unlawful arrest and unlawful search. That is the principle of collateral estoppel, that a litigant should have only one opportunity to litigate an issue. *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), held that federal courts are to give judgments of state courts the same preclusive effect in federal actions under § 1983 that they would be given under the state's own law. If in the course of Patterson's criminal proceeding it was determined that probable cause existed for his arrest, and Patterson had a full and fair opportunity to litigate the issue, it could bar his claim. In *Currier v. Baldridge,* 914 F.2d 993 (7th Cir.1990), co-plaintiff Braun had been convicted of disorderly conduct in interfering with the police as they led his co-plaintiff out of the courtroom after arresting him. Braun's conviction for disorderly conduct established that the arresting officer, who had witnessed the altercation, had probable cause for the arrest and the plaintiff's Fourth Amendment rights had not been invaded.

Although the court in *Currier* stated broadly that "a plaintiff's previous conviction collaterally estops the plaintiff from asserting a lack of probable cause," the court did not indicate that the ordinary limitations of collateral estoppel were inapplicable. Collateral estoppel requires that the issue in question have actually been determined in the prior proceeding and have been essential to its outcome. *See, e.g., Meyer v. Rigdon,* 36 F.3d 1375, 1379 (7th Cir.1994). If, as in *Currier,* the arresting officer witnessed the crime and the conviction had been based on his testimony, proof of the crime is *ipso facto* proof of probable cause. But that would not be the case had the officer arrested the suspect on a hunch, then later found evidence that led to his conviction. See *Quinn v. Cain,* 714 F.Supp. 938, 941 (N.D.Ill. 1989) (Aspen, J.).[1]

1. *Allen v. McCurry, supra,* requires a federal court to apply the state's law of collateral estoppel. The court notes that under Illinois law a criminal conviction is only *prima facie* evidence, not conclusive evidence, of the facts upon which

the conviction is based. *Bay State Insurance Co. v. Wilson,* 96 Ill.2d 487, 492, 71 Ill.Dec. 726, 728, 451 N.E.2d 880, 882 (1983); *Thornton v. Paul,* 74 Ill.2d 132, 151, 23 Ill.Dec. 541, 549, 384 N.E.2d 335, 343 (1978). See *Quinn,* 714

Patterson's conviction is currently on appeal to the Illinois Appellate Court. Defendants are correct that it is possible for a decision pending on appeal to have collateral effect. *Amcast Industrial Corporation v. Detrex Corp.*, 45 F.3d 155, 160 (7th Cir.1995), cert. denied, —— U.S. ——, 115 S.Ct. 2248, 132 L.Ed.2d 256 (1995). Nevertheless, collateral estoppel cannot be applied without a showing that the fact of the arresting officer's having probable cause to arrest Patterson was litigated and was essential to the judgment. An arrest based on probable cause need not be essential to a conviction, which brings us to the defendants' next argument.

### C. Heck v. Humphrey

The Supreme Court held in *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), that if an element of a plaintiff's claim in a suit under § 1983 would necessarily invalidate a criminal conviction or sentence, he may not proceed with his civil suit under § 1983 until he can first show that his conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal or called into question by a federal court's issuance of a writ of habeas corpus. Defendants contend that *Heck* bars Patterson's claims. However, a Fourth Amendment violation—an unlawful search or an unlawful arrest—does not necessarily undermine a criminal conviction. *Simpson v. Rowan*, 73 F.3d 134, 136 (7th Cir.1995), cert. denied, —— U.S. ——, 117 S.Ct. 104, 136 L.Ed.2d 58 (1996). Unless the plaintiff's success on the merits would demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit. *Id.*

It may be that in this case it does, that if Patterson's claim were proven, those facts necessary to his claim would invalidate his conviction. But that cannot be determined

from Patterson's sketchy complaint and the mere fact of his conviction.

### STATE LAW CLAIMS

Defendants point out that Patterson was arrested on May 28, 1994, this suit was filed on February 20, 1996, and the Illinois Governmental Employees Tort Immunity Act provides that "no civil action may be commenced ... against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued." 745 ILCS 10/8–101 (1994). In response, Patterson states that "the detectives didn't confess to the constitutional violations until January 26, 1995" and he did not receive transcripts until February of 1996. Plaintiff's Answer For Defendants Motion To Dismiss at 2.

Patterson's point is well taken. Illinois recognizes the "discovery rule," that a cause of action does not accrue until the plaintiff knows, or reasonably should know, of his injury. *Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill.2d 72, 77–79, 209 Ill.Dec. 684, 686–88, 651 N.E.2d 1132, 1134–36 (1995); *Schweihs v. Burdick*, 96 F.3d 917 (7th Cir.1996). It is not clear at this time what claims Patterson is asserting under Illinois law. If they parallel his Fourth Amendment claims, certainly Patterson would have known more than a year before this suit was filed that the searches were conducted without a warrant, that he did not consent to them, and that there was no warrant for his arrest. But it is not yet clear what relationship the searches had to his arrest, and what Patterson knew and when. For example, Patterson might not necessarily have known at the time of his arrest that the arresting officer did not have evidence amounting to probable cause. The records submitted by defendants show that the trial court entertained motions to quash Patterson's arrest and suppress evidence in January and February of 1995 and Patterson's trial was not held until November of 1995. When Patter-

---

F.Supp. at 940. Nevertheless, a conviction's status as *prima facie* evidence of the *facts* is not inconsistent with its being taken for conclusive proof of the *reasonable belief* of the witness upon whose testimony the conviction is based that the

accused committed the crime. The latter, of course, is synonymous with probable cause; if the witness is the arresting officer we have the situation in *Currier*.

son knew or should have known that his rights had been invaded is a question of fact that cannot be resolved at this stage.

## YOUNGER ABSTENTION

The Seventh Circuit in *Simpson* stated that normally a suit under § 1983 seeking damages for a search or arrest leading to a conviction should be allowed to proceed in the absence of some other bar to the suit. There is another bar, although not raised by the defendants: Patterson's pending appeal.

In *Simpson*, as here, the plaintiff had sued for damages for an unlawful search and arrest while his conviction and death sentence were being appealed in state court. The district court had dismissed the suit, stating that the issues raised in Simpson's § 1983 action would involve issues on appeal in the state proceeding, citing *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

The Seventh Circuit noted that *Younger* did not directly control the outcome. *Younger* had held that except in extraordinary circumstances federal courts should abstain from enjoining ongoing state criminal proceedings. *Samuels v. Mackell*, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), had held that a federal court should likewise abstain from issuing a declaratory judgment, which would have same disruptive effect on state proceedings as an injunction. But neither the Supreme Court nor the Seventh Circuit had determined whether the so-called *Younger* doctrine applies when the plaintiff seeks damages for misconduct in an underlying criminal case and he could prevail without necessarily invalidating his conviction. Finding that a plurality of Courts of Appeals applies *Younger* "in some fashion" to damage claims similar to those brought by Simpson, the Seventh Circuit held that abstention was required. *Simpson*, 73 F.3d at 137.

 *Simpson* controls this case. As in *Simpson*, Patterson is claiming an unlawful search and an unlawful arrest. While it does not appear from Patterson's complaint that proof of his claim would necessarily invalidate his conviction, requiring dismissal under *Heck*, it is highly likely that these issues will be argued in Patterson's appeal. In such a case, "the potential for federal-state friction is obvious," *id.*, this court's ruling could conflict with that of a state court, and this court must abstain.

The Seventh Circuit held in *Simpson* that the district court should have stayed the action pending the resolution of the plaintiff's criminal appeal rather than dismissing it, in order to assure that the running of the statute of limitations would not deny the plaintiff a forum for his constitutional claims. *Id.* at 139. Accordingly, this suit will be stayed pending the resolution of Patterson's appeal. In the unlikely event that (a) Patterson can show that his criminal appeal does *not* challenge the validity of the searches and his arrest, and (b) Patterson states in an affidavit filed with the court that he has not challenged, and will not challenge, the searches and arrest in any post-conviction petition filed or to be filed in Illinois state court, the stay will be lifted.

## CONCLUSION

Defendants' motion to dismiss [23] the complaint is granted in part and denied in part. To the extent Patterson's complaint purports to state claims for forgery or perjury, such claims are dismissed. To the extent defendants have moved to dismiss all state law claims on limitations grounds and to dismiss Patterson's Fourth Amendment claims as barred by collateral estoppel or as premature under *Heck v. Humphrey*, their motion is denied without prejudice to their renewing these arguments in a motion for summary judgment when they can establish the appropriate factual predicates for them. The motion to dismiss is denied in all other respects.

Patterson's motion to file the amended complaint [26] is denied, and his Motion for Request of Completed Marshall Forms [33] is denied as moot. Patterson's motion for a writ of habeas corpus to attend a status hearing [32] is denied.

All proceedings in this action are stayed pending resolution of Patterson's criminal appeal. Patterson's motion for fees incurred in fulfilling defendants' request for production [38] is denied without prejudice; Patterson does not need to comply with defendants'

discovery requests until the stay is lifted. The parties are ordered to notify the court when all state court proceedings have terminated in the appeal of Patterson's conviction. Within forty-five days after this court lifts the stay and permits it to proceed, Patterson must file either a statement amplifying his complaint as set forth above or an amended complaint complying with the Federal Rules.