Walter R. LANG, Sr. and Walter R. Lang, Jr., Plaintiffs,

v.

CITY OF ROUND LAKE PARK, Michael C. Robinson, City of Fox Lake, Charles Gliniewicz, and John Hoyne, Defendants.

No. 98 C 4891.

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 4, 2000.

Philip M. Kiss, Kiss & Associates, Ltd., Libertyville, IL, for plaintiffs.

Steven M. Puiszis, Charles Henry Wahtola, III, Hinshaw & Culbertson, Chicago, IL, for defendants.

## *MEMORANDUM OPINION AND ORDER*

KENNELLY, District Judge.

On August 9, 1997, Walter Lang Sr. and his son Walter Lang Jr. were arrested by off-duty Village of Round Lake Park[1] police officer Michael Robinson and by two Village of Fox Lake police officers, Charles Gliniewicz and John Hoyne. Though Lang Sr. later pled guilty to a charge of driving under the influence of alcohol, he and Lang Jr. have sued the officers and the Villages under 42 U.S.C. § 1983 for false

arrest, false imprisonment, and the use of excessive force and have also made common law claims against the officers. Defendants have moved for summary judgment. For the reasons stated below, we grant summary judgment in favor of the two Villages and the Fox Lake officers, but we deny the summary judgment motion made by Robinson, the off-duty Round Lake Park officer.

### FACTS

In support of their summary judgment motions, defendants have submitted affidavits from Robinson and Gliniewicz, as well as a video tape from a camera that was mounted on the Fox Lake officers' squad car. Defendants have also submitted the reports prepared by the Fox Lake officers concerning the incident. Both plaintiffs have submitted affidavits in opposition to summary judgment.

In his affidavit, Robinson says that in the early evening of August 9, 1997, he was off duty and driving along Route 12 in Fox Lake when he saw the Langs' car back into another car. A female passenger in the second car got out and approached the Langs' car; Lang Sr. yelled obscenities at her and drove off. Robinson began to follow the Langs' car along Route 12; it was "weaving through traffic at an excessive rate of speed." When the Langs stopped at a light at the intersection of Routes 12 and 134, Robinson got out of his car, approached the Langs' car, and identified himself as a police officer. He asked Lang Sr., who was driving, to turn off the car; Robinson says he did this because he believed that Lang Sr. was intoxicated. Lang Sr. began to shout obscenities. Robinson says he noticed that there was a strong odor of alcohol on Lang Sr.'s breath, his speech was slurred, and his eyes were red and glassy. When Lang Sr. did not turn off his car, Robinson reached inside the car to do it himself. He says

1. The Village of Round Lake Park and the Village of Fox Lake are incorrectly named in the caption as the City of Round Lake Park and the City of Fox Lake. We will use the correct names in this Opinion.

that Lang Sr. lunged at him, which prompted Robinson to spray him with pepper spray. Lang Jr., who was in the front passenger seat of the car, then lunged at Robinson, who sprayed him as well. Lang Jr. stumbled out of the car in the direction of traffic. Robinson stopped him, but Lang Jr. then threatened him physically, prompting Robinson to spray him again. Shortly after this, Fox Lake officers Gliniewicz and Hoyne arrived and, after speaking with Robinson, took the Langs into custody.

Gliniewicz says in his affidavit that he and Hoyne were dispatched to the intersection of Routes 12 and 134 to assist an off-duty Round Lake Park officer who was already there. When they arrived, Robinson told them essentially the story set forth in his affidavit. Robinson said he had personally witnessed these events and would sign complaints against the Langs for hit and run, improper lane usage, driving under the influence, and assault.[2] Based on all of this, the Fox Lake officers took Lang Sr. into custody. They summoned medical personnel to treat the Langs for intoxication and the effects of the pepper spray. They say that the only contact they had with Lang Sr. was to hold him so that they could handcuff him, and that they had no contact with Lang Jr. at all. Gliniewicz also says that while he and Hoyne were at the scene, the driver and passenger of the car that the Langs' car had struck arrived and positively identified the Lang car as the one that had backed into them.

At the Fox Lake police station, a breath test was administered to Lang Sr., and the result showed a blood alcohol content of .16. This was above Illinois' legal limit of .08. *See* 625 ILCS 5/11–501(a)(1). On June 9, 1998, Lang Sr. pled guilty to a charge of driving under the influence of alcohol. Lang Jr. was not charged with any offenses.

The Fox Lake officers' police car was equipped with a video camera. Because the Fox Lake officers arrived after Robinson had already detained the Langs, the video camera did not record the initial events at the scene. It does appear, however, to have recorded all of the events that occurred as the Fox Lake officers approached the scene and after they arrived. Defendants submitted the video tape as an exhibit to their motion. The tape does not depict the use of any excessive force by the Fox Lake officers or by Robinson after the Fox Lake officers arrived. Rather, it confirms Gliniewicz's account of the events. At one point on the tape, the officers hold Lang Sr. for a few seconds in order to handcuff him, but they otherwise use no force at all against either Lang.

Lang Sr. and Lang Jr. both submitted affidavits in opposition to defendants' motions. Lang Sr. says that he was not intoxicated or under the influence of alcohol. He says that if he had any contact with the car behind him on Route 12, it consisted of "a very slight touching of the bumpers caused either by my backing up to let another driver negotiate a nearby driveway as a courtesy to that driver, or by the moving forward of" the car behind. He did not believe there was anything to report to the authorities, and he says that the occupants of the other car did not request insurance information or police assistance. He also says Robinson could not have seen the incident, because based on a diagram accompanying Robinson's police report, Robinson was in front of Lang's car and the other car at the time of the incident.[3]

2. Gliniewicz does not say that Robinson made a distinction between the two Langs, though obviously only the driver could be charged with the offenses other than assault. Indeed, Gliniewicz's affidavit indicates that after Lang Jr. was given medical treatment, he was re-

leased; it does not appear that he was charged with any offense.

3. No such diagram was submitted to the Court by either plaintiffs or defendants, though it was referenced in Lang Sr.'s affidavit.

According to Lang Sr., after he stopped at the light at the intersection of Routes 12 and 134, he was approached by a man in a t–shirt and jeans who "came out of nowhere, suddenly startling [him]," struck the window of his car with an object, and demanded his car keys. Lang Sr. says the man, whom he now knows to be Robinson, "never did anything which led me to believe he was a police officer" but rather "gave me the impression that he was trying to steal my vehicle." When he did not immediately respond to the demand for his keys, Lang Sr. says, the man sprayed him in the face with a burning liquid, causing him pain. He then felt himself being beaten about the head, shoulder, arm and chest. Lang Sr. denies threatening Robinson and also denies having alcohol on his breath, red or glassy eyes, or slurred speech. Lang Sr. says that "[a]fter the spraying by [Robinson], I was repeatedly beaten about the head, shoulders, arm and hands and stomped on and kicked in the head and shoulders by [Robinson] and two other officers," whom he now knows to be Hoyne and Gliniewicz. He says he did not threaten them and did nothing to resist in any way.

With regard to his guilty plea to the DUI charge, Lang Sr. says he asked his attorney to withdraw his guilty plea, but the attorney refused, so he filed a *pro se* motion to withdraw the plea on the grounds that he was innocent. The judge, however, denied his motion on grounds that are not disclosed.

Lang Jr. corroborates his father's account and says Lang Sr. was not driving at a high rate of speed, using improper lanes, or changing lanes improperly. Lang Jr. says that he did nothing to provoke Robinson to spray him with the pepper spray and that he, too, was beaten about the head, shoulder, arm and chest, presumably by Robinson, before the other officers arrived. He says he did nothing to resist, and he also claims to have been beaten by the two other officers who arrived at the scene after Robinson had sprayed him.

## DISCUSSION

Summary judgment is appropriate only if the affidavits and other evidentiary materials submitted by the parties show "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

### Claims against Fox Lake defendants

■■■ We begin with the claims against Fox Lake officers Gliniewicz and Hoyne. They argue that they had probable cause to arrest the Langs based on Robinson's account of the events he had observed, or that, at a minimum, they are entitled to qualified immunity for their actions under *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Probable cause to arrest exists if " 'at the moment the arrest was made . . . the facts and circumstances within their knowledge and of which [the officer] had reasonably trustworthy information were sufficient to warrant a prudent man in believing' " that the arrestee had violated the law. *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (quoting *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)). Even if probable cause did not exist, the arresting officer is immune from suit if a reasonable officer could have believed the arrest to be lawful, in light of clearly established law and the information the officer possessed. *Id.* at 227, 112 S.Ct. 534. In other words, a law enforcement official who " 'reasonably but mistakenly conclude[s] that probable cause is present' " is entitled to immunity. *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

■■■ The Langs have offered no evidence disputing Gliniewicz's sworn statement that Robinson told him and Hoyne that he had witnessed the commission of several offenses by the Langs, including traffic offenses and assault, and that he was prepared to swear a complaint against them. Whether or not Robinson was telling them the truth, and whether or not his

observations were accurate, his statements to the Fox Lake officers were sufficient to justify them in arresting the Langs. Probable cause exists when an officer has " 'received his information from some person—normally the putative victim or an eye witness—who it seems reasonable to believe is telling the truth.' " *Sheik–Abdi v. McClellan,* 37 F.3d 1240, 1247 (7th Cir. 1994). And if " 'a reasonably credible witness or victim informs the police that someone has committed, or is committing, a crime, the officers have probable cause to place the alleged culprit under arrest, and their actions will be cloaked with qualified immunity [even] if the arrestee is later found innocent.' " *Spiegel v. Cortese,* 196 F.3d 717, 723 (7th Cir.1999) (quoting *Jenkins v. Keating,* 147 F.3d 577, 585 (7th Cir.1998)). If a police officer is justified in making an arrest based on a store security guard's report that he witnessed a crime, as the Seventh Circuit held in *Gramenos v. Jewel Companies, Inc.,* 797 F.2d 432, 439 (7th Cir.1986), then Gliniewicz and Hoyne certainly had a reasonable basis to rely upon the report of another police officer who claimed to have witnessed several offenses, at least absent some indication that Robinson's account was not plausible. Plaintiffs have offered no evidence indicating "that it was unreasonable for an officer to believe [Robinson's] statements." *Gerald M. v. Conneely,* 858 F.2d 378, 381 (7th Cir.1988). Based on the undisputed evidence, Gliniewicz and Hoyne had probable cause to arrest the Langs or are at least entitled to qualified immunity in connection with the arrest.

■ The video tape establishes that there is no *genuine* issue of fact with regard to the claim that Gliniewicz and Hoyne used excessive force against the Langs.[4] This is not a question of how events are to be interpreted—in other words whether the force that was used was excessive or unjustified. Rather, the tape demonstrates that the Fox Lake officers used no force at all vis-a-vis either of the

Langs other than to hold Lang Sr.'s arms in order to handcuff him. There was no actionable excessive force; no reasonable juror could find otherwise after seeing the tape. The Langs' vague and non-specific accounts that they were beaten by officers other than Robinson at a point in time after they had been blinded by the pepper spray is not sufficient to create a genuine issue of fact on this score, in light of the video tape's contemporaneous recording of the events, which belies the Langs' claims against the Fox Lake officers.

■ In sum, Gliniewicz and Hoyne are entitled to summary judgment. Because there is no viable claim against any Fox Lake officer, *a fortiori* the § 1983 claims against the Village of Fox Lake must fail as well. *See City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) (*per curiam*).

### Claims against Round Lake Park defendants

■ The Langs have also alleged that Robinson falsely arrested them and used excessive force. It is undisputed that Robinson's actions prior to the arrival of the Fox Lake officers constituted a seizure of both Langs within the meaning of the Fourth Amendment. *See generally Tennessee v. Garner,* 471 U.S. 1, 7, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) (seizure occurs whenever an officer restrains a person's freedom or ability to leave).

■ With regard to the false arrest claim, a police officer who sees a traffic violation take place is entitled to stop the perpetrator's vehicle. *See, e.g., Lanigan v. Village of East Hazel Crest,* 110 F.3d 467, 473–74 (7th Cir.1997). Here, however, the Langs claim they did not do the things Robinson says he saw them do. Resolution of these conflicting accounts requires credibility determinations that can be made only at a trial. The same is true of

4. We deny plaintiffs' motion to strike the video tape on the grounds that it was not properly authenticated. Gliniewicz's affidavit adequately establishes a foundation for admissibility of the tape.

the excessive force claim; Robinson's contention that he used only reasonable force presents fact issues that preclude summary judgment.

■ Robinson also argues, however, that Lang Sr.'s later guilty plea to driving under the influence establishes as a matter of law that there was probable cause to arrest, thus defeating Lang Sr.'s false arrest claim. Robinson relies on *Turner v. Green*, 704 F.Supp. 139 (N.D.Ill.1988), in which the court held that the plaintiff's later conviction of the offense for which he was arrested established probable cause and thus barred his claim for false arrest. *Id.* at 141, citing *Hornung v. Village of Park Forest*, 634 F.Supp. 540, 543 (N.D.Ill. 1986). *Turner's* citation of *Hornung* indicates that the court based its decision on the doctrine of collateral estoppel: in *Hornung*, the court held that the plaintiff's conviction of an offense collaterally estopped him from maintaining that probable cause to arrest was lacking. *Hornung*, 634 F.Supp. at 543, citing *Friedman v. Village of Skokie*, 763 F.2d 236, 239 (7th Cir.1985); *Terket v. Lund*, 623 F.2d 29, 31 (7th Cir.1980). But neither *Friedman* nor *Terket*, the two cases relied upon by the *Hornung* court, held any such thing. Rather, both cases stand simply for the proposition that proof of probable cause bars a claim for false arrest. *Friedman*, 763 F.2d at 239; *Terket*, 623 F.2d at 31. In neither case did the Seventh Circuit hold that a later conviction established that there had been probable cause to arrest; indeed neither case involved that issue at all (in *Friedman*, the § 1983 plaintiff had been *acquitted* in the underlying criminal case, *see* 763 F.2d at 238).

■ A guilty plea in a state court criminal case can have a preclusive effect in a later action under § 1983, but its actual effect can only be determined based on the law of the state in which the judgment was rendered. *See Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). In Illinois, the doctrine of collateral estoppel, otherwise known as issue preclusion, precludes relitigation of an

issue in a later proceeding only if, among other things, the issue was actually litigated and decided on the merits and its resolution was necessary to the result in the case. *See, e.g., Appley v. West*, 832 F.2d 1021, 1025 (7th Cir.1987); *Talarico v. Dunlap*, 281 Ill.App.3d 662, 665, 217 Ill. Dec. 481, 667 N.E.2d 570, 572 (1996). In this case, there is no indication that the state court judge who heard Lang Sr.'s criminal case determined, or was asked to determine, that there was probable cause to arrest, let alone that such a determination was necessary to the judgment in that case. Thus under Illinois law, the finding of guilt would not preclude Lang Sr. from contending in this case that probable cause to arrest was lacking.

The Supreme Court's decision in *Haring v. Prosise*, 462 U.S. 306, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983), supports this conclusion. In *Haring*, the Court held that a criminal defendant's guilty plea did not preclude him from challenging in a later § 1983 suit a claimed violation of his Fourth Amendment rights. *Id.* at 319. Under the law of the state where the defendant had pled guilty, issue preclusion did not apply to issues not actually litigated and determined in the first proceeding, and the Fourth Amendment issue had not been litigated in the criminal case. *Id.* at 315–16, 103 S.Ct. 2368. (The court held that even if the Fourth Amendment issue *had* been determined in the criminal case, its determination would have been in no way "necessary" to acceptance of the defendant's guilty plea, another requirement for collateral estoppel to apply. *Id.* at 316, 103 S.Ct. 2368.) The Court's statement of the rule announced in *Haring* was that an individual's "conviction in state court does not preclude him from [later] seeking to recover damages under 42 U.S.C. § 1983 for an alleged Fourth Amendment violation that was never considered in the state proceedings." *Id.* at 323, 103 S.Ct. 2368. While the Fourth Amendment claim in *Haring* involved an allegedly illegal search, false arrest claims, like that made

by Lang Sr., also arise under the Fourth Amendment.

■ Probable cause to arrest and guilt are, in fact, two distinct issues. The former involves whether the officer had sufficient information *at the time of the arrest* to warrant a reasonable person to believe that the defendant had committed a crime; the latter involves whether there is sufficient evidence *at the time of the conviction* (by trial or by guilty plea) to demonstrate the defendant's guilt beyond a reasonable doubt. The fact that there is ultimately sufficient evidence to convict a criminal defendant does not always mean that there was probable cause to arrest him in the first place. It is not particularly uncommon for the police to develop significant evidence *after* arresting a suspect that ultimately is the critical evidence leading to a conviction. Indeed, that is likely what occurred here. Lang Sr.'s guilty plea likely was based on matters not within Robinson's knowledge at the time he initially seized Lang Sr.—in particular the breath test administered to him at the Fox Lake police station. In sum, the issues of probable cause to arrest and proof of guilt are, at least in this case, materially different.

In *Currier v. Baldridge,* 914 F.2d 993 (7th Cir.1990), the Seventh Circuit held that a § 1983 plaintiff's "conviction supports the arrest: a plaintiff's previous conviction collaterally estops the plaintiff from reasserting a lack of probable cause." *Id.* at 996. In *Currier,* however, unlike in this case, the evidence that produced the conviction was the testimony of the eyewitness-arresting officer; there was no difference between the evidence used to determine probable cause and that used to determine guilt. *Currier* does not require the same result under the distinct circumstances present here. We agree with *Patterson v. Leyden,* 947 F.Supp. 1211 (N.D.Ill.1996), that *Currier* does not preclude the Court from applying the ordinary limitations governing the doctrine of issue preclusion. As Judge Plunkett said in *Patterson,* issue preclusion requires "that the issue in question have

actually been determined in the prior proceeding and have been essential to its outcome." *Id.* at 1217. When, as in *Currier,* the conviction is premised entirely on the testimony of the arresting officer concerning his observations, "proof of the crime is *ipso facto* proof of probable cause." *Id.* But that was not the case in *Patterson,* and it is not the case here. Lang Sr.'s conviction for driving under the influence, which as best we can tell was premised largely on the results of the breath test taken after his arrest, does not establish that Robinson had probable cause to arrest him in the first place. Thus as a matter of issue preclusion, Lang Sr.'s later conviction for driving under the influence does not establish that Robinson had probable cause to arrest him. *See Cameron v. Fogarty,* 806 F.2d 380, 385 (2d Cir. 1986) (holding that conviction does not collaterally estop criminal defendant from claiming false arrest in late § 1983 suit).

■ The Second Circuit's decision in *Cameron,* though not cited by defendants, supplies an alternative way in which Lang Sr.'s conviction might be used to bar his false arrest claim. In *Cameron,* the court held that under the common law, a convicted defendant cannot sue for false arrest, and that this common law defense equally applies under § 1983. *Id.* at 387–89. We cannot follow this aspect of *Cameron* here. The Second Circuit's analysis was premised on the view that claims of false arrest and malicious prosecution are essentially equivalent, *see id.* at 386–87; based on this premise, it concluded that the common law rule that a person cannot maintain a malicious prosecution claim if he was convicted likewise applies to false arrest claims. The Seventh Circuit, however, has made it clear that malicious prosecution and false arrest claims stand on entirely different footings in this regard.

Following the Supreme Court's decision in *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), that an individual convicted of a crime cannot bring a malicious prosecution claim under

42 U.S.C. § 1983 unless his conviction has been reversed or otherwise called into question, the Seventh Circuit has addressed in a series of cases whether that same principle applies to other sorts of § 1983 claims. It has repeatedly concluded that a person may maintain a false arrest claim even if he was ultimately convicted of the offense and even if the conviction still stands. In *Simpson v. Rowan*, 73 F.3d 134 (7th Cir.1995), *cert. denied*, 519 U.S. 833, 117 S.Ct. 104, 136 L.Ed.2d 58 (1996), the plaintiff, who was still awaiting trial on the charges for which he had been arrested, sued for (among other things) false arrest. By the time of the appeal, he had been convicted. The court addressed whether *Heck* barred plaintiff's false arrest claim. It concluded that the claim was not barred because even if successful, the claim "would [not] *necessarily* undermine the validity of his conviction for felony murder." *Id.* at 136 (emphasis in original). The court noted that "an illegal search or arrest may be followed by a valid conviction," and thus the conviction need not be set aside in order for the plaintiff to pursue a false arrest claim. *Id.*

In *Booker v. Ward*, 94 F.3d 1052 (7th Cir.1996), *cert. denied*, 519 U.S. 1113, 117 S.Ct. 952, 136 L.Ed.2d 840 (1997), the plaintiff, who had been convicted of murder but whose conviction was reversed on appeal, sued for false arrest more than two years after his arrest; defendants argued that the claim was time-barred, as the statute of limitations for § 1983 claims arising in Illinois is two years. The issue was when plaintiff's false arrest claim had accrued. Plaintiff argued that success on his false arrest claim "would necessarily imply the invalidity of his conviction" and that under *Heck* he could not bring a § 1983 claim until his conviction was vacated, which was within the two years prior to the filing of suit. *Id.* at 1056. The Seventh Circuit disagreed, saying that "a wrongful arrest claim, like a number of other Fourth Amendment claims, does not inevitably undermine a conviction; *one can have a successful wrongful arrest claim and still have a perfectly valid convic-*

*tion."* *Id.* (emphasis added). *See also Sneed v. Rybicki*, 146 F.3d 478, 481 (7th Cir.1998); *Perez v. Sifel*, 57 F.3d 503, 505 (7th Cir.1995).

In sum, the rationale underlying *Cameron* has essentially been rejected by the Seventh Circuit. We do not believe that the Seventh Circuit would follow *Cameron* if asked to do so. *See King v. Goldsmith*, 897 F.2d 885 (7th Cir.1990) (noting that *Cameron* has been questioned).

*Cameron* also relies on the notion that where a person was ultimately found guilty of an offense, the goals of § 1983 are not furthered by permitting him to bring a false arrest suit, for "[t]he fact of conviction means that the plaintiff was not entitled to escape arrest entirely and that the arrest was simply premature. Though the right to be free from arrest without probable cause is substantial, the injury caused solely by prematurity of the arrest is, of itself, insubstantial." *Cameron*, 806 F.2d at 388. A person's recoverable damages in this situation may prove to be minimal or even nonexistent, and the desire to weed out claims perceived to be insubstantial is an understandable one. But that has never been a ground for refusing a person whose constitutional rights have been violated the right to sue for, at least, nominal damages. *See Edwards v. Balisok*, 520 U.S. 641, 645, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997) (nominal damages for procedural due process violation); *Carey v. Piphus*, 435 U.S. 247, 266–67, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (same); *Kyle v. Patterson*, 196 F.3d 695 (7th Cir.1999) (nominal damages for unlawful detention); *Briggs v. Marshall*, 93 F.3d 355, 359–60 (7th Cir. 1996) (nominal damages in excessive force case). And one cannot categorically rule out the possibility that a particular person arrested falsely but later convicted might have suffered a significant compensable loss of some sort as a result of his false arrest. The right to be free from arrest absent probable cause deserves protection irrespective of whether the authorities are ultimately able to produce evidence suffi-

cient to convict. *See Patterson*, 947 F.Supp. at 1217. For this and the other reasons set forth above, we decline to follow *Cameron v. Fogarty*. *See Rose v. Bartle*, 871 F.2d 331, 351 (3d Cir.1989) (criticizing *Cameron*).

 Even though we are constrained to deny Robinson's summary judgment motion, we grant summary judgment in favor of Round Lake Park. Municipal liability under § 1983 is limited to those deprivations of rights caused by action taken pursuant to a policy, practice, or custom of the municipality. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The Langs have made no effort to forward any evidence of the existence of a policy on the part of the Village that produced the constitutional wrongs claimed by the Langs (indeed, they did not even plead the existence of such a policy). Their claim against the Village thus cannot stand.

## CONCLUSION

Plaintiff's motion to strike defendants' video tape is denied. The motions for summary judgment of defendants Gliniewicz, Hoyne, the Village of Fox Lake, and the Village of Round Lake Park are granted. The motion to dismiss filed by defendants Gliniewicz, Hoyne, and the Village of Fox Lake is denied as moot in light of this ruling. Those defendants' motion to strike plaintiffs' Rule 12N statement is likewise denied as moot. The motion for summary judgment of defendant Robinson is denied. This case is set for a status hearing on January 13, 2000 at 9:30 a.m.