Jackie MORGAN, Plaintiff,

v.

R. STRINGER, Defendant.

No. 96 C 1107.

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 12, 1996.

Zedrick Thomas Braden, III, Chicago, IL, for Plaintiff.

Francis P. Cuisinier, Russell W. Hartigan, James Patrick Newman, Russell W. Hartigan & Associates, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Robert Stringer ("Stringer") has filed a Fed.R.Civ.P. ("Rule") 56 summary judgment motion in this 42 U.S.C. § 1983 ("Section 1983") action brought against him by Jackie Morgan ("Morgan"). For the reasons stated in this memorandum opinion and order, Stringer's motion is granted and this action is dismissed with prejudice.

Morgan's Complaint begins by characterizing her action as one "for false arrest." That state law characterization may be a convenient shorthand description, but more accurately in federal constitutional terms (the predicate for a Section 1983 claim) Morgan charges Stringer with a violation of the Fourth (actually Fourteenth) Amendment [1] in having arrested her (a Fourth Amendment "seizure") without probable cause.

To defeat that claim as a matter of law, Stringer's counsel has complied with Rule 56 and with this District Court's General Rule ("GR") 12(M) implementing that Rule. In response Morgan's counsel has ignored the related GR 12(N) requirement entirely, instead submitting only two documents respectively captioned:

> Plaintiff Jackie Morgan's Answer to Defendant's Motion for Summary Judgment and Attorney's Fees

> Memorandum of Law in Support of Plaintiff Jackie Morgan's Answer to Motion for Summary Judgment of Defendant

In any such situation GR 12(N) specifies the serious consequences to the nonresponding Rule 56 respondent:

> All material facts set forth in the statement required of the moving party [in this instance Stringer] will be deemed to be admitted unless controverted by the statement of the opposing party.

There are a host of Court of Appeals decisions upholding our District Court's enforcement of GR 12(M) and 12(N) in just those terms, *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 389 (7th Cir.1995) being typical of them:

> We have on numerous occasions upheld a district court's strict adherence to that

---

1. As always, this opinion adheres to the conventional and convenient (though technically imprecise) practice of referring to the underlying Bill of Rights provision (which of course imposes limitations only on the federal government) rather than to the Fourteenth Amendment (which applies to state actors and has been construed to embody such Bill of Rights guaranties).

rule. *See, e.g., Stewart v. McGinnis,* 5 F.3d 1031, 1034 (7th Cir.1993) (collecting cases), *cert. denied,* 510 U.S. 1121, 114 S.Ct. 1075, 127 L.Ed.2d 393 (1994). Thus, if the party opposing summary judgment fails to respond to the facts set out by the movant, the court may assume those facts to be admitted and use them in determining whether the movant is entitled to judgment as a matter of law. *See Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 922 (7th Cir.1994) (collecting cases).

As it happens, though, that doctrine of "strict adherence" makes no difference in the outcome here, because the existence of probable cause for Stringer's arrest of Morgan is clearly beyond dispute in any event.

As this Court has frequently observed, this is the type of case in which it really doesn't make much sense to frame Stringer's position (as his counsel does from the outset) in terms of his "qualified immunity." Although that approach is regularly encountered in submissions from lawyers in the public law offices (the offices of the Illinois Attorney General, the Cook County State's Attorney and the Chicago Corporation Counsel) who are called on to deal with Section 1983 cases in substantial volume in this District Court, closer attention demonstrates that it does not truly jibe with the basic underpinnings of the qualified immunity doctrine.

■ As has been made plain by the seminal decision in this area, *Harlow v. Fitzgerald,* 457 U.S. 800, 814, 816–18, 102 S.Ct. 2727, 2736, 2737–38, 73 L.Ed.2d 396 (1982), that doctrine has been devised to spare state actors from even having to face lawsuits, let alone to defend them, unless the conduct *with which they are charged* violated some clearly established constitutional right at the time that they acted (consistently with that reason for the rule, *Harlow, id.* at 818, 102 S.Ct. at 2738 stressed the notion that motions for summary judgment on qualified immunity grounds ought to be advanced at the earliest possible stage, even antedating discovery). *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) then supplemented that concept by explaining in greater detail what was meant by "clearly established law," and later cases have contin-

ued to flesh out that concept. Thus, for example, *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991) (per curiam) continues to "stress[ ] the importance of resolving immunity questions at the earliest possible stage in litigation" and goes on to say (*id.* at 228, 112 S.Ct. at 537):

> Immunity ordinarily should be decided by the court long before trial.

In terms of "clearly established" law, it has of course always been understood that the presence or absence of probable cause is the determining factor as to whether an arrest—a Fourth Amendment "seizure" of the arrestee—is "unreasonable" (which is the constitutional criterion). So if a plaintiff claims that an arrest was lacking in probable cause and if an officer claims that he or she had such cause, with the issue having to be resolved in factual terms at trial, the label of qualified immunity is an ill-fitting garment to clothe that inquiry.

It is true that such cases as *Anderson* and *Hunter* do speak in these terms (*Anderson,* 483 U.S. at 641, 107 S.Ct. at 3040, quoted in part in *Hunter,* 502 U.S. at 227, 112 S.Ct. at 536):

> It follows from what we have said that the determination whether it was objectively legally reasonable to conclude that a given search was supported by probable cause or exigent circumstances will often require examination of the information possessed by the searching officials. But contrary to the Creightons' assertion, this does not reintroduce into qualified immunity analysis the inquiry into officials' subjective intent that *Harlow* sought to minimize. See *Harlow,* 457 U.S., at 815–20 [102 S.Ct. at 2736–39]. The relevant question in this case, for example, is the objective (albeit fact-specific) question whether a reasonable officer could have believed Anderson's warrantless search to be lawful, in light of clearly established law and the information the searching officers possessed. Anderson's subjective beliefs about the search are irrelevant.

> The principles of qualified immunity that we reaffirm today require that Anderson be permitted to argue that he is entitled to

summary judgment on the ground that, in light of the clearly established principles governing warrantless searches, he could, as a matter of law, reasonably have believed that the search of the Creightons' home was lawful.

But that juxtaposition of summary judgment practice with the notion of qualified immunity can be properly understood only by recognizing that there are two very different types of summary judgment motions that may be proffered in the Section 1983 canon. That idea requires a bit more elaboration, to which this opinion now turns.

In one type of situation (exemplified by *Harlow, Anderson* and *Hunter*) either (1) there is really no dispute from the beginning as to what circumstances confronted a public official (say a male police officer) or as to how the official responded to those circumstances (say by making an arrest) or (2) the officer does not as an initial matter dispute the plaintiff's version of events, but contends that even in those terms he is entitled to judgment as a matter of law on qualified immunity grounds (the legal equivalent of the first scenario). In either of those instances the "clearly established right" question—the Rule 56 question—is typically a function of how novel the circumstances confronting the officer were in terms of probable cause (in the hypothetical situation posed by the parenthetical assumptions in this paragraph, such novelty or lack of it is examined in terms of Fourth Amendment "seizure" jurisprudence). And that inquiry can readily be made, as *Harlow* counsels, right up front—before discovery or other fact-intensive activity.

But contrast the situation in which the parties differ materially as to the circumstances that confronted the official (to pursue the same example, a male police officer), although there is no question that those cir-

cumstances had to satisfy the requirements of probable cause to support a constitutionally sustainable arrest (for which read Fourth Amendment "seizure").[2] If then it requires a trial to resolve those circumstances in favor of the police officer, so that he prevails on the probable cause issue and thus defeats the Section 1983 claim, it would surely be an odd locution to speak of him as having established "qualified immunity" in the *Harlow–Anderson–Hunter* sense: That victory would have come at the price of having been embroiled in the litigation process all the way to its ultimate conclusion.

And the situation is little different if the same degree of preparation and involvement, including all aspects of the discovery process, must be completed to enable the officer's version of the factual circumstances to prevail on a Rule 56 summary judgment motion rather than after an evidentiary trial, though producing the same conclusion that probable cause had supported the arrest. In that event too the officer would have been substantially diverted from his normal duties to become enmeshed in the litigation—the very consequence that *Harlow* and its progeny say the concept of qualified immunity is intended to avoid.[3]

■ Much the same point, albeit in a different context and not quite in the same terms, has been made by our Court of Appeals in *Maxwell v. City of Indianapolis*, 998 F.2d 431, 435–36 (7th Cir.1993)—it speaks in part of "the substantial, if not complete, overlap of the issue of immunity and the principal issue on the merits." That thoughtful discussion must be read in full to do it justice, but in this Court's view it too supports the idea that counsel would be better advised to reserve their arguments of qualified immunity as such for the situations of the first types discussed above, and instead to speak only in terms of prevailing on the probable cause

---

**2.** In that sense, of course, there is also no question but that the right not to be arrested in the absence of probable cause to do so is and has long been a "clearly established constitutional right."

**3.** Thus *Harlow* speaks of the goal of averting the "subject[ion of] government officials either to the costs of trial or to the burdens of broad-reaching

discovery" (457 U.S. at 817–18, 102 S.Ct. at 2738), goes on to mention "avoid[ing] excess disruption of government and permit[ting] the resolution of many insubstantial claims on summary judgment" (*id.* at 818, 102 S.Ct. at 2738) and concludes (*id.*):

Until this threshold immunity question is resolved, discovery should not be allowed.

question as a matter of law (with no mention of qualified immunity at all) in the present type of summary judgment situation. To be sure, in the current summary judgment context—with the facts as one-sided and unequivocal as they are on the probable cause issue—the point made here and in *Maxwell* might be said to come down to a matter of labels rather than substance. But because so much of the life of the law lies in its language, it seems to this Court that the point is well worth making.

 To turn now to the merits of the case, the uncontroverted testimony of eyewitness John Watson ("Watson"), a parking lot attendant, confirms that he witnessed an act of criminal vandalism (the damaging of a car parked in the lot) and that, when Evanston patrol officer Stringer arrived at the scene to take a report, Watson positively identified Morgan as the individual whom he had seen next to the car and whom he had seen moving her arm in a way that corresponded to the damage that was inflicted on the car. Similarly, Stringer's uncontroverted affidavit confirms that he was the Evanston officer who was assigned to investigate the complaint of criminal damage to property and that he was the one who interviewed Watson, who positively identified Morgan as the one who had caused the property damage.

Stringer's affidavit also provides some further confirmatory details in that respect. It then goes on to the next day, when a criminal complaint was sworn out against Morgan by the owner of the automobile and his daughter, who had been its driver (Stringer's investigation included an interview of the daughter, who told him that she and Morgan "attended the same school and were currently involved in a dispute between themselves") (Stringer Aff. ¶ 9).

Under those circumstances Stringer has indisputably established the existence of probable cause for his ensuing arrest of Morgan. This case is a slam dunk. *Any* reasonable person in Stringer's position, having heard what he heard, would view that as having established probable cause for the arrest. And that is an absolute bar to Morgan's Section 1983 claim (see, e.g., *Sheik–Abdi v. McClellan*, 37 F.3d 1240, 1247 (7th Cir.1994); *Mark v. Furay*, 769 F.2d 1266, 1268–69 (7th Cir.1985) and cases cited there).

### Conclusion

There is no genuine issue of material fact, and Stringer is entitled to a judgment as a matter of law. This action is dismissed with prejudice.

One last item remains for resolution: Stringer's request for an award of attorneys' fees under 42 U.S.C. § 1988. Neither side has spoken to that subject in substantive terms at all. Because Morgan's counsel has noticed up a motion for the belated filing of the Rule 56 response to be presented on November 15, both sides' attorneys should come to that motion call prepared to address the attorneys' fees request (although this Court *now* grants the motion for leave to file Morgan's response late).