Charles BOYCE, Plaintiff,
D.O.C. # 964819

v.

Jack L. WOODRUFF, et al., Defendants.

Civil No. 1:96–CV–332.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Aug. 26, 1997.

Charles Boyce, Pendleton, IN, pro se.

J. Timothy McCaulay, Helmke, Beams, Boyer and Wagner, Fort Wayne, IN, for defendants.

## MEMORANDUM OF DECISION AND ORDER

COSBEY, United States Magistrate Judge.

### I. INTRODUCTION

This matter comes before the Court[1] on the motion for summary judgment filed by Defendants, Neil Moore ("Moore"), Jack L. Woodruff ("Woodruff"), R. Jennings ("Jennings"), and S. Adam ("Adam") (collectively, "the Defendants"), on April 11, 1997. The Plaintiff, Charles Boyce ("Plaintiff"), filed a response on July 28, 1997. The Defendants filed their reply on July 28, 1997. For the following reasons, the motion will be GRANTED in part and DENIED in part.

### II. FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiff initiated this cause of action by filing a *pro se* complaint under 42 U.S.C. § 1983 (" § 1983") on September 16, 1996, alleging generally that his constitutional rights were violated as to whether there was probable cause to arrest him, as to whether he was arrested inside his home without a warrant, and as to whether he was unlawfully detained without a prompt probable cause determination following his arrest.[2]

1. Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting.

2. 42 U.S.C. § 1983 states:

Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other

On April 11, 1997, the Defendants filed their Motion for Summary Judgment together with certain exhibits in support. On the same date, the Defendants provided a "Notice of Consequences of Any Failure to Respond to the Defendants' Motion for Summary Judgment" by sending the notice to the Plaintiff's last known address. *See Lewis v. Faulkner*, 689 F.2d 100, 102–03 (7th Cir. 1982). On May 2, 1997, the Court sent a similar "Notice and Order" to the Plaintiff at his last known address. *Id.* The Court's notice granted the Plaintiff until May 29, 1997, to respond to the Defendants' Motion for Summary Judgment. In the meantime, on April 24, 1997, the Plaintiff filed a *pro se* request for an additional ninety days to respond, and, although he gave no supporting reasons, the Court granted it. Thus, the Plaintiff was granted to and including July 24, 1997, to respond. (*See* Order entered May 6, 1997.)[3]

On July 28, 1997, the Plaintiff filed his response to the pending Motion for Summary Judgment.[4] Despite being admonished by both the Defendants' notice and the Court's notice, the Plaintiff has failed to provide any affidavits or other admissible evidence that would demonstrate that there is a genuine issue of material fact for trial. (*See* Court's "Notice and Order" filed May 2, 1997, at 2.) As the Court's "Notice and Order" recited:

> Unless you respond to this motion with sworn statements which contradict important facts claimed by the defendants in defendants' sworn materials, the court will accept the defendants' uncontested facts as true. More importantly, you will lose this lawsuit, in whole or in part, if the court determines that, under those unchallenged facts, the defendants are entitled to judgment under the law.

The Plaintiff's one page response merely recites that there are genuine issues of material fact but he does not describe those "facts." Indeed, the Plaintiff merely recites his claims: that the Defendants are responsible for his prolonged detention; that they are responsible for his illegal arrest; and that they delayed filing an information and affidavit for probable cause. The Court will address these issues, but the recitation of facts as hereinafter provided is necessarily accepted by the Court as true since they are supported by the Defendants' sworn materials. (*See* "Notice and Order" filed May 2, 1997, at 2.). As we shall see, however, this recitation does not necessarily lead to the granting of summary judgement as a matter of law.

On August 17, 1994, shortly before 6:00 a.m., Cornelius Augustus called "911" to report that his brother, Anthony Augustus, had been shot at their residence at 922 Hugh Street, Fort Wayne, Indiana, by their nephew, the Plaintiff, who lived at 912 Madison Street, also in Fort Wayne. (Woodruff Aff. ¶ 3.) Detective Woodruff was dispatched to 922 Hugh Street and interviewed Cornelius Augustus. (*Id.* ¶ 4.) Cornelius advised Woodruff that at approximately 5:30 a.m. that morning he had heard a knock on the front door, exited his bedroom, observed his brother Anthony open the door, and noticed the Plaintiff at the front door. (*Id.* ¶ 5.) Anthony and the Plaintiff went into Anthony's bedroom, and then Cornelius overheard parts of a conversation between them about a truck. (*Id.* ¶¶ 6–7.) He then heard what sounded like four (4) gunshots from Anthony's room, and when he left his bedroom to

---

person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

3. After the entry of the May 6, 1997 order the Plaintiff sought another extension of time but that request was denied since the Court had already extended the response date to July 24, 1997, and no good cause was shown as to why the Plaintiff could not comply with the July 24, 1997 deadline. (*See* Order entered May 30, 1997.)

4. The Plaintiff's response was captioned "Motion to Dismiss Defendants' Motion for Summary Judgment." Although the motion was filed on July 28, 1997, it was actually placed in the prison mail system on July 23, 1997, and therefore the Court considers the response to be timely. *Simmons v. Ghent*, 970 F.2d 392, 393 (7th Cir.1992) (citing *Houston v. Lack*, 487 U.S. 266, 270, 108 S.Ct. 2379, 2382, 101 L.Ed.2d 245 (1988) (In prisoner pro se cases a filing is deemed timely if lodged with prison authorities, for forwarding to the district court, within the time permitted)).

see what was happening, he observed the Plaintiff leaving the house through the front door. (*Id.* ¶¶ 8–9.)

Meanwhile, at approximately 6:00 a.m., the police dispatcher broadcast a report of the shooting that named Plaintiff as the "suspected perpetrator." (Jennings Aff. ¶ 3; Adam Aff. ¶ 3.) Jennings had had prior contact with the Plaintiff and could recognize him. (Jennings Aff. ¶ 4.) He and Adam proceeded to the Plaintiff's residence where they observed him sitting on the porch reading a newspaper. (Jennings Aff. ¶ 5; Adam Aff. ¶ 3.) Jennings, in full uniform, approached the Plaintiff and advised him that he was wanted for questioning concerning a shooting. (Jennings Aff. ¶ 6; Adam Aff. ¶ 4.) Boyce made no statement in response to Jennings. (Jennings Aff. ¶ 7; Adam Aff. ¶ 5.) Jennings then "Mirandized" the Plaintiff and advised him that he was under arrest on a preliminary charge of aggravated battery, and that he would be taken to Police Headquarters for questioning about the Hugh Street shooting.[5] (Jennings Aff. ¶ 8; Adam Aff. ¶¶ 4, 6). Officer John DiFilippo ("DiFilippo") transported Plaintiff to the Fort Wayne Police Headquarters, 1320 E. Creighton Street, ("Police Headquarters"), and placed him in an interview room to wait for the detectives assigned to the case. (DiFilippo Aff. ¶¶ 3–4.)

During the same time frame, at approximately 6:00 a.m., Detective Michelle Adam ("M.Adam") received a page to respond to 922 Hugh Street concerning a shooting. (M. Adam Aff. ¶ 4.) While en route to 922 Hugh Street, she received a report that a suspect in the shooting had been taken into custody at 912 Madison. (M. Adam Aff. ¶ 5.) She then proceeded to 912 Madison, where she questioned the occupants of that location and conducted a consensual search of the residence. (M. Adam Aff. ¶ 6).

Detectives M. Adam and Woodruff each returned to Police Headquarters shortly before 9:00 a.m. on August 17, 1994, after gathering information from the scenes of the Plaintiff's arrest at 912 Madison and the

shooting at 922 Hugh Street, respectively. (M. Adam Aff. ¶ 7; Woodruff Aff. ¶ 10.) By that time, Anthony Augustus had died as a result of the gunshot wounds he had sustained. (Woodruff Aff. ¶ 11.) M. Adam and Woodruff consulted briefly with then Allen County Chief Deputy Prosecutor Fran Gull before attempting to interview the Plaintiff. (M. Adam Aff. ¶ 8, Woodruff Aff. ¶ 12.) At approximately 9:00 a.m., M. Adam attempted to interview the Plaintiff but he refused to answer any questions. (M. Adam Aff. ¶ 9; Woodruff aff. ¶ 13.) M. Adam then left the interview room and consulted again with Deputy Prosecutor Gull. (M. Adam Aff. ¶ 10; Woodruff Aff. ¶ 15.) Deputy Prosecutor Gull advised her to arrest the Plaintiff for the murder of Anthony Augustus. (M. Adam Aff. ¶ 11.) M. Adam returned to the interview room, and at 9:10 a.m. on August 17, 1994, advised the Plaintiff that he was under arrest for murder. (*Id.* ¶ 12.) Woodruff was present in the room at the time. (Woodruff Aff. ¶ 16.) Plaintiff was then transported to the Allen County Lock-up. (*Id.* ¶ 17.)

Thereafter, none of the Fort Wayne police officers who are defendants in this action had any contact with the Plaintiff prior to his initial hearing on the charge of murder. (Moore Aff. ¶ 4; Woodruff Aff. ¶ 18; Jennings Aff. ¶ 11; Adam Aff. ¶ 8.) The Allen County Lock-up and Jail are operated by the Allen County Sheriff and not by the Fort Wayne Police Department. (Moore Aff. ¶¶ 6–8.) None of the defendant police officers requested that the Plaintiff's probable cause hearing be delayed. (Moore Aff. ¶ 9; Woodruff Aff. ¶ 19; Jennings Aff. ¶ 12; Adam Aff. ¶ 9.) The Plaintiff was also not a suspect in any unsolved crime that any of the defendant police officers were investigating at the time of Plaintiff's August 17, 1994, arrest. (Woodruff Aff. ¶ 20; Jennings Aff. ¶ 13; Adam Aff. ¶ 10.)

The Plaintiff appeared before a state judicial officer on August 18, 1994, at approximately 9:00 a.m., who found probable cause to hold the Plaintiff. (*See* Def. Exh. A.) On August 23, 1994, a formal charge of murder

---

5. Apparently Anthony Augustus was still alive at this point, but how Jennings knew this is unclear.

*See* discussion *infra* note 8.

was filed against him. (*See* Def. Exh. B.) Approximately two years later, he pled guilty to voluntary manslaughter, a charge added as a second count. (*Id.; see also* Def. Exh. C.) On October 16, 1996, Plaintiff was sentenced to twenty years' imprisonment on the voluntary manslaughter charge. (*See* Def. Exh. B.)

## III. SUMMARY JUDGMENT PRINCIPLES

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir.), *cert. denied*, 474 U.S. 824, 106 S.Ct. 79, 88 L.Ed.2d 64 (1985). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the judgement as a matter of law standard under Rule 50(a), which requires the court to grant judgement as a matter of law where "there can be but one reasonable conclusion as to the verdict." *Zayre Corp. v. S.M. & R. Co. Inc.*, 882 F.2d 1145, 1153 (7th Cir.1989) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. at 2512; *North Am. Van Lines, Inc. v. Pinkerton Sec. Sys., Inc.*, 89 F.3d 452, 455 (7th Cir.1996); *In re Wildman*, 859 F.2d 553, 557 (7th Cir.1988); *Klein v. Ryan*, 847 F.2d 368, 374 (7th Cir.1988). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 322 (7th Cir.1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Goka v. Bobbitt*, 862 F.2d 646, 649 (7th Cir.1988); *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983); *Guenin v. Sendra Corp.*, 700 F.Supp. 973, 974 (N.D.Ind.1988). In ruling on a summary judgment motion, the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence nor the credibility of witnesses. *Anderson*, 477 U.S. at 249–51, 106 S.Ct. at 2511; *North Am. Van Lines, Inc.*, 89 F.3d at 455. However, "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate. *Mason v. Continental Ill. Nat'l Bank*, 704 F.2d 361, 367 (7th Cir. 1983).

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* The issue of fact must be genuine. Fed.R.Civ.P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356; *First Nat'l Bank of Cicero*

v. *Lewco Sec. Corp.*, 860 F.2d 1407, 1411 (7th Cir.1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356. A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2512.

## IV. DISCUSSION

■ The Plaintiff's complaint is by no means a model of legal draftsmanship. However, "allegations of the *pro se* complaint [are held] to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) (per curiam), and we are required to construe *pro se* filings liberally. *Coulter v. Gramley*, 93 F.3d 394, 397 (7th Cir.1996). Construed in the most liberal sense, the Complaint alleges: (1) the Plaintiff's arrest on his porch for aggravated battery violated the Fourth Amendment because it was not supported by probable cause; (2) the Plaintiff's later arrest at the Police Headquarters for murder also violated the Fourth Amendment for the same reason; and, (3) the duration of the Plaintiff's detention between his arrests and his probable cause hearing was unreasonable under the Fourth Amendment and *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). Viewing the record in a light most favorable to the Plaintiff, and granting him every reasonable inference from the facts, the Court will address these claims seriatim. *Arazie v. Mullane*, 2 F.3d 1456, 1465 (7th Cir.1993). Summary judgement for the Defendants will be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

### A. The Arrest for Aggravated Battery on the Plaintiff's Porch

■ The complaint states only a general Fourth Amendment challenge to the arrest for aggravated battery that occurred on the Plaintiff's porch. The Court liberally construes this claim to allege that the arrest by Jennings was unconstitutional for two reasons: first, that there was a lack of probable cause to make this warrantless arrest; and second, the warrantless arrest took place inside the Plaintiff's home in violation of *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).[6]

#### 1. Probable Cause

■ The absence of probable cause is a necessary predicate to any unlawful arrest claim under § 1983. *Jones v. Webb*, 45 F.3d 178, 181 (7th Cir.1995). Police officers have probable cause to arrest an individual when "the facts and circumstances within their knowledge and of which they [have] reasonably trustworthy information [are] sufficient to warrant a prudent [person] in believing that the [suspect] had committed or was committing an offense." *Sheik–Abdi v. McClellan*, 37 F.3d 1240, 1246 (7th Cir.1994), *cert. denied*, 513 U.S. 1128, 115 S.Ct. 937, 130 L.Ed.2d 882 (1995) (citing *Maxwell v. City of Indianapolis*, 998 F.2d 431, 433 (7th Cir. 1993)); *Beck v. State of Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 226, 13 L.Ed.2d 142 (1964); *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949). The rule of probable cause has been described as a "practical, nontechnical conception" that accommodates the often competing interests of effective law enforcement and the privacy and liberty of law-abiding

---

**6.** The Plaintiff's claim under *Payton* is untenable. The warrantless arrest took place on the Plaintiff's porch (Jennings Aff. ¶ 8, Adam Aff. ¶¶ 4, 6), and as such, he did not enjoy a reasonable expectation of privacy because he " 'was as exposed to public view, speech, hearing, and touch as if [he] had been standing completely outside [his] home.' " *United States v. Berkowitz*, 927 F.2d 1376, 1386 (7th Cir.1991). *cert. denied*, 502 U.S. 845, 112 S.Ct. 141, 116 L.Ed.2d 108 (1991) (quoting *United States v. Santana*, 427 U.S. 38, 42, 96 S.Ct. 2406, 2409, 49 L.Ed.2d 300 (1976)). *See also* 3 Wayne R. LaFave, *Search and Seizure* § 6.1(e) n. 158 (3d ed.1996) (collecting cases). The Court will therefore analyze the Plaintiff's claim only as to the assertion that there was a lack of probable cause.

citizens. *Sheik–Abdi,* 37 F.3d at 1246 (citing *Brinegar,* 338 U.S. at 176, 69 S.Ct. at 1311). *See also* 2 Wayne R. LaFave, *Search and Seizure* § 3.2(a) (3d ed.1996). In practice, then, it can be said that "[p]robable cause— the area between bare suspicion and virtual certainty-describes not a point but a zone," *Llaguno v. Mingey,* 763 F.2d 1560, 1565 (7th Cir.1985) (*en banc* ), within which reasonable mistakes will be excused. *See Brinegar,* 338 U.S. at 176, 69 S.Ct. at 1311.˙ Ultimately, however, whether an officer had probable cause to make an arrest generally will present a question for the jury; that is, summary judgment is warranted only when the facts permit but one conclusion, that " 'no reasonable jury could find that the officer [ ] did not have probable cause' to make an arrest." *Webb,* 45 F.3d at 182 (quoting *Maxwell,* 998 F.2d at 434).

Applying these principles to the rather brief factual record, it must be observed that all Jennings knew at the time he arrested the Plaintiff was that the Plaintiff was the "suspected perpetrator" of a recent shooting. Based on this sketchy information, (which might have originated solely from a 911 call as discussed more fully *infra* ), Jennings and Adam went to the Plaintiff's house, found him on his porch reading a newspaper, attempted to interview him, and then summarily arrested him. A police bulletin identifying both a completed crime and a suspect provides the police with, at most, a reasonable, articulable suspicion justifying only a *Terry*-type investigative stop [7] so as "to check identification, to pose questions to the person, or to detain the person briefly while attempting to obtain further information." *United States v. Celio,* 945 F.2d 180, 183 (7th Cir.1991) (quoting *United States v. Hensley,* 469 U.S. 221, 232, 105 S.Ct. 675, 682, 83 L.Ed.2d 604 (1985)); *United States v. Longmire,* 761 F.2d 411, 419 (7th Cir.1985).

On the other hand, police bulletins, such as the one received by Jennings and Adam, do not alone provide probable cause to make a warrantless arrest of the identified suspect absent other information. *Hensley,* 469 U.S. at 232, 105 S.Ct. at 682 ("We conclude that, if a flyer or bulletin has been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense, then reliance on that flyer or bulletin *justifies a stop to check identification, to pose questions to the person, or to detain the person briefly while attempting to obtain further information* ") (emphasis added) (internal citations omitted); *United States v. Hernandez,* 486 F.2d 614, 616–17 (7th Cir.1973), *cert. denied,* 415 U.S. 959, 94 S.Ct. 1488, 39 L.Ed.2d 574 (1974) (Police bulletin stating defendant's vehicle carried illegal aliens covered by blankets and describing defendant's vehicle by year, model, and license plates justified an investigative stop, but was insufficient to support an arrest or search warrant). *See also Passman v. Blackburn,* 652 F.2d 559, 564–65 (5th Cir.1981), *cert. denied* 455 U.S. 1022, 102 S.Ct. 1722, 72 L.Ed.2d 141 (1982) (Police radio bulletin describing a suspect in an armed robbery was insufficient to support finding of probable cause; suspect had been arrested only twenty-five minutes after the crime); *United States v. LaVallee,* 522 F.2d 211, 214 (2d Cir.1975) *remanded on other grounds,* 428 U.S. 907, 96 S.Ct. 3215, 49 L.Ed.2d 1213 (1976) ("While a radio bulletin may justify immediate investigation, it does not establish probable cause for an arrest and search unless founded on information adequate to support a judicial determination of probable cause.") (citing *Whiteley v. Warden,* 401 U.S. 560, 568, 91 S.Ct. 1031, 1037, 28 L.Ed.2d 306 (1971)); *Cf. Celio,* 945 F.2d at 183–84 (Probable cause to arrest found from police radio bulletin conveying location and direction of a specific vehicle and its suspected contents; *Hensley* distinguished because knowledge attributed to arresting officer also included intricate details of wiretap surveillance and the more exigent circumstances of a continuing crime rather than a completed crime).

The defendants also apparently cannot rely upon the so-called "fellow officer" rule of *Whiteley,* 401 U.S. at 568–69, 91 S.Ct. at 1037, to save the arrest from its lack of probable cause. *Whiteley* stands for the

---

7. In *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court recognized that certain unintrusive investigative stops by police do not require probable cause.

proposition that the validity of an arrest by officers relying merely on a bulletin does not turn on whether those relying on the bulletin were aware of the specific facts creating probable cause to arrest, but rather, the focus of inquiry is on whether the officers who issued the bulletin had probable cause to make an arrest. *Hensley,* 469 U.S. at 231, 105 S.Ct. at 681; *Whiteley,* 401 U.S. at 568, 91 S.Ct. at 1037; *see also Gordon v. Degelmann,* 29 F.3d 295, 300 (7th Cir.1994).

A reasonable inference arises on this record, however, that the bulletin that motivated Jennings to act was not produced by another officer with probable cause. Consider the temporal sequence: Shortly before 6:00 a.m. Cornelius Augustus called "911" to report the shooting of his brother; Woodruff was then dispatched to investigate; at approximately 6:00 a.m. the police dispatcher broadcast a report of the shooting naming the Plaintiff as the suspected perpetrator; Jennings then arrested the Plaintiff shortly after 6:00 a.m. Viewing this sequence of events in a light most favorable to the Plaintiff, it is entirely possible, given the very short time between the receipt of the 911 call and the broadcasting of the police dispatch, that the dispatch was based only upon the 911 call from Cornelius Augustus and not upon any information transmitted by Woodruff. Stated another way, on this record a reasonable jury could find that there simply was not enough time for Woodruff to interview Cornelius, then turn around and transmit any information gleaned from him back to Police Headquarters so that it could then form the basis of a police bulletin. Since the bulletin was argu-

ably not based upon any officer's investigation, but issued only upon what the 911 caller said, the substance of which is unknown, the record does not inexorably lead to the conclusion that probable cause existed.[8] *See Whiteley,* 401 U.S. at 568, 91 S.Ct. at 1031.

Therefore, based on the record as it exists, and granting the Plaintiff every reasonable inference from the facts in the record, we find that a material issue of fact exists as to whether Jennings had probable cause to make a warrantless arrest of the Plaintiff.[9] Therefore, the Court will now turn to the defenses offered by the Defendants to this first arrest.

### 2. Collateral Estoppel

■ The Defendants make a very brief stab at arguing that the Plaintiff's conviction for voluntary manslaughter collaterally estops his § 1983 action for an unlawful arrest, relying upon *Currier v. Baldridge,* 914 F.2d 993, 996 (7th Cir.1990), *cert. denied,* 499 U.S. 962, 111 S.Ct. 1588, 113 L.Ed.2d 652 (1991), and *Cameron v. Fogarty,* 806 F.2d 380 (2d Cir.1986), *cert. denied,* 481 U.S. 1016, 107 S.Ct. 1894, 95 L.Ed.2d 501 (1987).

■ Left unargued by the Defendants is the suggestion, as stated in *Cameron,* that a common law rule applies to bar the Plaintiff's action. *Cameron,* of course, represents the Second Circuit's view that common law principles of tort immunity, not state collateral estoppel law, control in § 1983 actions; therefore a suit for false arrest under § 1983 is barred by a conviction for the underlying offense.[10] *Cameron,* 806 F.2d at 386. For

---

**8.** Another question arises on this record. Jennings supposedly arrested the Plaintiff for aggravated battery, (Jennings Aff. ¶ 8), but there is no showing that Jennings knew anything beyond the fact that a shooting had occurred. That is, he was unaware of the nature of the injuries inflicted—a necessary element for aggravated battery. Ind.Code § 35–42–2–1.5. If the arrest then was for battery, Ind.Code § 35–42–2–1(a)(1) it was only for a Class A misdemeanor. If so, probable cause would seem to require (since the events occurred outside the officer's presence) the testimony of someone with "direct knowledge of the incident alleging the elements of the offense ..." Ind.Code § 35–33–1–1(a)(5). That was apparently never achieved until after the Plaintiff's arrest.

**9.** Of course, if it is later revealed that the bulletin upon which Jennings acted was generated by

Woodruff's investigation and report (and his likely probable cause, discussed *infra*) then the "fellow officer" rule may very well apply.

**10.** The fact that the Plaintiff was arrested for aggravated battery on his porch and for murder at Police Headquarters, was charged with murder, and was ultimately convicted of voluntary manslaughter does not affect our inquiry. In Indiana, "[t]he facts and circumstances of which the arresting officer has knowledge that provide probable cause to believe a crime has been committed need not relate to the same crime with which the defendant is ultimately charged." *Sears v. State,* 668 N.E.2d 662, 667 n. 10 (Ind. 1996) (citing *Moody v. State,* 448 N.E.2d 660, 663 (Ind.1983)).

example, *Cameron* concluded that a person convicted of the offense for which he was arrested was absolutely barred from recovering against the arresting officer on the basis of either false imprisonment or malicious prosecution, the only common law claims that lie in challenging an allegedly unconstitutional arrest. *Id.* at 387. Under *Cameron's* reasoning, a conviction on the underlying offense operates as an absolute bar to recovery in any future § 1983 action, absent an allegation that the conviction was obtained by fraud. *King v. Goldsmith,* 897 F.2d 885, 887 (7th Cir.1990).

There is a serious difference of opinion among the Circuits, (indeed, even within some Circuits) as to whether the common law applies to § 1983 actions.[11] The Seventh Circuit has not specifically ruled on the issue, *see Goldsmith,* 897 F.2d at 886 (assuming, but not deciding, that *Cameron* is correct), and at least one district court in the Circuit is split. *Compare, Jerricks v. Bollin,* 1994 WL 117465 *2 (N.D.Ill.) (following *Cameron* ), *and Jimmerson v. Campbell,* 1993 WL 479053 (N.D.Ill.) (following *Cameron* ), *with Patterson v. Leyden,* 947 F.Supp. 1211, 1216 (N.D.Ill.1996) (disagreeing with *Cameron.*)

Having considered the issue, we find Judge Plunkett's discussion of the issue persuasive, and elect not to follow the *Cameron* rule. *See Patterson,* 947 F.Supp. at 1215–18. To oversimplify the point, the common law rule was never intended by the drafters of § 1983 to apply, should not be extended to cases under § 1983, and to do so would impose an absolute bar to a cause of action without any examination of the arresting officer's state of mind. Such a rule, grounded in the Restatement (Second) of Torts § 667(1), grants the arresting officer protection "from liability for the consequences of honest and reasonable mistakes." Restatement (Second) of Torts § 121, comment g. However, to apply the common law rule would mean that officers receive immunity only if a conviction

is obtained—a powerful incentive to the officer to shade his testimony not only as to probable cause, but to guilt as well. *Patterson,* 947 F.Supp. at 1217. In short, "[a]t the time of his arrest the convict has the same right as other citizens not to be arrested without probable cause, and it is a questionable rule that would permit this right to be taken away *post hoc.*" *Id.*

Turning now to the Defendants' stated contention that collateral estoppel applies, it should first be noted that both *Cameron* and *Currier* are inapposite to the situation presented here because the Plaintiff's conviction resulted from a guilty plea, not a contested trial. *See Currier,* 914 F.2d at 996, *Cameron,* 806 F.2d at 382. Therefore, this case actually is governed by *Haring v. Prosise,* 462 U.S. 306, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983), which addressed a plea of guilty in a Virginia state proceeding that was followed by a later § 1983 action, contending that a search in connection with the criminal investigation violated the Fourth Amendment.

The *Haring* Court looked to state law to determine if collateral estoppel precluded the § 1983 claim, and found that collateral estoppel applied in Virginia only to issues actually litigated, determined, and necessary to support the judgement in the first judicial proceeding. *Id.* at 314–15, 103 S.Ct. at 2374 (internal citations omitted). The Court then conclusively determined that the legality of the search at issue in the § 1983 claim had never been actually litigated in the plea proceedings, those proceedings never determined any issues upon which Prosise needed to prevail in order to win his § 1983 claim, and the criminal plea proceedings never needed to address the legality of the alleged illegal search. *Id.* at 316–17, 103 S.Ct. at 2374–75. A unanimous Court therefore determined that the issue of the legality of the search at issue in the § 1983 claim was not foreclosed by Prosise's guilty plea and subsequent judgement of conviction. *Id.* at 317,

---

11. The Sixth and Eighth Circuits have followed *Cameron. Walker v. Schaeffer,* 854 F.2d 138, 143 (6th Cir.1988); *Malady v. Crunk,* 902 F.2d 10, 11 (8th Cir.1990). The Tenth Circuit has indicated it approves of *Cameron,* and the Fifth Circuit has issued contradictory opinions on the issue. *Howard v. Dickerson,* 34 F.3d 978, 981 n. 2 (10th Cir.1994) (apparent approval in dictum); *Brumfield v. Jones,* 849 F.2d 152, 155 n. 4 (5th Cir. 1988) ("[t]he effect of a conviction on the issue of probable cause in a civil setting is less than etched in stone in this circuit.") The Third Circuit has criticized *Cameron. Rose v. Bartle,* 871 F.2d 331, 351 (3d Cir.1989).

103 S.Ct. at 2375. The Court went on to explain that a guilty plea is not an admission of the legality of related searches or arrests, it does not constitute a knowing waiver of Fourth Amendment rights, and a defendant's decision to plead guilty may rest on many relevant factors other than the admission of all charges against him; in sum, the decision to plead guilty "cannot be regarded as a concession of any kind that a Fourth Amendment evidentiary challenge would fail." *Id.* at 317–22, 103 S.Ct. at 2375–78.

It is well settled in the Seventh Circuit that a federal court applies state collateral estoppel law in assessing whether a state court judicial determination precludes relitigation of a § 1983 claim. *Schertz v. Waupaca County*, 875 F.2d 578, 581 (7th Cir.1989) (relying upon *Haring*); *Bailey v. Andrews*, 811 F.2d 366, 369 (7th Cir.1987) (same); *Guenther v. Holmgreen*, 738 F.2d 879, 884 (7th Cir.1984), *cert. denied* 469 U.S. 1212, 105 S.Ct. 1182, 84 L.Ed.2d 329 (1985) (same). However, since the Court has not found an Indiana decision precisely on point, any guidance must therefore be obtained from those Indiana decisions that speak to collateral estoppel generally. *See Haring*, 462 U.S. at 314, 103 S.Ct. at 2372.

Indiana's test for collateral estoppel differs somewhat from Virginia's test as it was analyzed by the Supreme Court in *Haring*. *See Sullivan v. American Casualty*, 605 N.E.2d 134, 139 (Ind.1992) ("[W]e determine what the first judgement decided and then examine how that determination bears on the second case.") (citing *Webb v. State*, 453 N.E.2d 180, 183 (Ind.1983), *cert. denied*, 465 U.S. 1081, 104 S.Ct. 1449, 79 L.Ed.2d 767 (1984)). In practice, however, Indiana courts have used an analysis similar to the *Haring* Court's interpretation of Virginia's analysis in determining if collateral estoppel applies.

The party to be estopped in Indiana must have had a full and fair opportunity to litigate the issue, *Sullivan*, 605 N.E.2d at 138, the issue must have been actually litigated and decided in the first suit, *Hockett v. Breunig*, 526 N.E.2d 995, 998 (Ind.Ct.App.1988) (quoting *Town of Flora v. Indiana Service Corp.*, 222 Ind. 253, 257, 53 N.E.2d 161, 163 (Ind.1944)), and the issue must be necessary to the decision in the first judicial proceeding, *Webb*, 453 N.E.2d at 183–84.

In essence then, the collateral estoppel law of Virginia and Indiana are the same and it naturally follows that the Defendant's collateral estoppel argument must be dismissed. The Plaintiff, as a result of his plea, did not have a full and fair opportunity to litigate the constitutionality of his arrest, assuming it would have even been germane.[12] Indeed, the legality of the Plaintiff's arrest was not actually litigated in the plea proceedings, the plea proceedings did not actually determine any issue upon which the Plaintiff must prevail in order to win his § 1983 claim, and finally, a determination that the arrest involved no illegal police conduct was not necessary to the acceptance of the Plaintiff's guilty plea.[13] *See Haring*, 462 U.S. at 316–17, 103 S.Ct. at 2374–75. Therefore, the Plaintiff's guilty plea does not collaterally estop him from proceeding with this suit.

### 3. Qualified Immunity

The defendants apparently assert qualified immunity as an affirmative defense, though they do not argue it in support of their motion for summary judgement. However, since the issue may later arise, the Court will speak to it now. "Qualified immunity shields [officers] from suit for damages if 'a reasonable officer could have believed [the arrest] to be lawful, in light of clearly established law and the information the offi-

---

**12.** While an illegal arrest can lead to the imposition of an exclusionary rule, *see Jackson v. State*, 669 N.E.2d 744, 750 (Ind.Ct.App.1996), the issue never came up in the Plaintiff's criminal case because the Plaintiff never made an inculpatory statement. Moreover, in Indiana a criminal conviction is not necessarily conclusive proof in a related civil trial of the factual issues determined by the criminal judgement. *Kimberlin v. DeLong*, 637 N.E.2d 121, 124 (Ind.1994), *cert. denied*, —— U.S. ——, 116 S.Ct. 98, 133 L.Ed.2d 53 (1995).

**13.** The Plaintiff is not contending that his subsequent conviction was improper (or necessarily invalidated) as a result of this alleged illegal arrest, and therefore *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), does not apply. *See Simpson v. Rowan*, 73 F.3d 134, 136 (7th Cir.1995), *cert. denied*, —— U.S. ——, 117 S.Ct. 104, 136 L.Ed.2d 58 (1996).

cers possessed.'" *Edwards v. Cabrera,* 58 F.3d 290, 292 (7th Cir.1995) (quoting *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991) (citations omitted)). Therefore, Jennings will be shielded from liability if he actually had probable cause to arrest the Plaintiff in light of then established legal principles, or, absent probable cause, if he held the objectively reasonable belief that he had probable cause to arrest. *Id.* at 292–93 (citing *Hunter,* 502 U.S. at 227, 112 S.Ct. at 536).

■ Having found a material issue of fact as to the issue of probable cause as noted *supra,* a denial of summary judgement on the issue of qualified immunity results as well: "[w]here the only issue bearing on immunity is whether the defendant had probable cause to make the search or arrest that is challenged, merits and immunity merge; the dispositive question is simply whether the defendant did have probable cause." *Boyce v. Fernandes,* 77 F.3d 946, 948 (7th Cir.1996); *see also Maxwell,* 998 F.2d at 435–36 (suggesting issues of qualified immunity and merits merge when probable cause is involved); *Mahoney v. Kesery,* 976 F.2d 1054, 1057–58 (7th Cir.1992) (Undertaking an immunity analysis "may not be the sensible course when, as in this case, the issue of immunity and the principal issue on the merits are one and the same"); *Morgan v. Stringer,* 945 F.Supp. 1129, 1131 (N.D.Ill.1996) ("[I]f a plaintiff claims that an arrest was lacking in probable cause and if an officer claims that he or she had such cause, with the issue having to be resolved in factual terms at trial, the label of qualified immunity is an ill-fitting garment to clothe that inquiry.")

This is not to overlook some contrasting precedent holding to the view that "even in the absence of probable cause for an arrest, qualified immunity provides officers with an additional layer of protection against civil liability." *Hughes v. Meyer,* 880 F.2d 967, 970 (7th Cir.1989), *cert. denied,* 495 U.S. 931, 110 S.Ct. 2172, 109 L.Ed.2d 501 (1990); *see also Maltby v. Winston,* 36 F.3d 548, 555 n. 7

(7th Cir.1994), *cert. denied,* 515 U.S. 1141, 115 S.Ct. 2576, 132 L.Ed.2d 827 (1995) (Criticizing *Kesery* and arguing that the Supreme Court has been presented with ample opportunities to rule that the questions of qualified immunity and probable cause merge and has failed to do so). Nevertheless, our entry into this debate is unnecessary on the record before us. Assuming *arguendo* that an immunity analysis is warranted, it is clear on this record that no reasonable officer would have believed that he had probable cause to arrest the Plaintiff, and the Defendants have not pointed to any relevant legal authorities that would teach otherwise. Consequently, if we assume the record will not materially change, Jennings is not entitled to qualified immunity. *See Reardon v. Wroan,* 811 F.2d 1025, 1030 (7th Cir.1987).

### 4. Conclusion as to the First Arrest

■ The motion of Jennings must be denied since he was personally involved in arresting the Plaintiff, allegedly without probable cause, in deprivation of his constitutional rights. The motion of Adam, who apparently did not arrest the plaintiff, must nevertheless be denied, since he allegedly failed to intervene to prevent the deprivation from occurring, despite having an opportunity to do so. *See Yang v. Hardin,* 37 F.3d 282, 285–86 (7th Cir.1994).

### B. The Arrest for Murder in the Fort Wayne Police Headquarters

The complaint states only a general Fourth Amendment challenge to the Plaintiff's arrest at the Police Headquarters for murder around 9:10 a.m. on August 17, 1994. The Court liberally construes this claim to allege that the arrest was unconstitutional because the arresting officer (allegedly Woodruff) lacked probable cause to make the warrantless arrest for murder at that time.[14]

#### I. Probable Cause

■ The Seventh Circuit has consistently held that "[w]hen an officer has 'received his information from some person—normally the

---

**14.** The record reflects that while Woodruff was present, M. Adam (who was never named as a party) was actually the arresting officer. Therefore, the allegation as to Woodruff must necessarily be that he failed to intervene to prevent an

alleged unlawful arrest. *See Yang,* 37 F.3d at 285–86. However, since the Court will hold that the arrest by M. Adam was supported by probable cause, this point is purely technical.

putative victim or an eye witness—who it seems reasonable to believe is telling the truth,' he has probable cause." *Sheik–Abdi,* 37 F.3d at 1247 (quoting *Grimm v. Churchill,* 932 F.2d 674, 675 (7th Cir.1991)); *see also Jones v. City of Chicago,* 856 F.2d 985, 994 (7th Cir.1988) (stating that an identification given by a "lucid" victim would establish probable cause); *Gramenos v. Jewel Companies, Inc.,* 797 F.2d 432, 439 (7th Cir.1986), *cert. denied,* 481 U.S. 1028, 107 S.Ct. 1952, 95 L.Ed.2d 525 (1987) (same). On this record we are presented with a somewhat typical case: Cornelius Augustus, who had personal knowledge of the shooting and the perpetrator, related facts to the investigating officer, Woodruff, that established a crime, and Woodruff had no reason to disbelieve Cornelius' statement. Woodruff communicated this information to M. Adam, who, after consulting with the Chief Deputy Prosecutor, made a warrantless arrest of the Plaintiff. M. Adam's decision to arrest the Plaintiff for murder is well supported by probable cause, *Sheik–Abdi,* 37 F.3d at 1247–48, and the Plaintiff has no claim for this arrest under § 1983 as a matter of law. *Webb,* 45 F.3d at 183.

### 2. Qualified Immunity

■ Even assuming *arguendo* that M. Adam did not have probable cause to arrest the Plaintiff, Woodruff is surely protected by qualified immunity. M. Adam learned of Cornelius Augustus' statements implicating the Plaintiff by speaking directly with Woodruff upon his return from the crime scene. M. Adam did not actually arrest Plaintiff until she consulted two separate times with the Chief Deputy Prosecutor, who actually advised her to arrest the Plaintiff during the second consultation. Woodruff knew that M. Adam had his report, knew that it supported probable cause, and knew that both he and M. Adam had consulted with the Chief Deputy Prosecutor. Woodruff therefore had an objectively reasonable belief that M. Adam had probable cause to arrest the Plaintiff for murder.

### 3. Conclusion

As a matter of law, the Plaintiff has no claim for an unlawful arrest under § 1983 stemming from this second arrest and summary judgement will be granted to Woodruff accordingly.

### C. The Alleged Prolonged/Illegal Detention

■ "In *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), the Supreme Court held that, following a warrantless arrest, the Fourth Amendment requires a prompt judicial determination of probable cause before an arrestee may be subjected to extended pretrial detention." *Willis v. City of Chicago,* 999 F.2d 284, 287 (7th Cir.1993), *cert. denied* 510 U.S. 1071, 114 S.Ct. 879, 127 L.Ed.2d 74 (1994). The *Gerstein* holding acknowledges that prolonged pretrial detention occasions serious interference with liberty rights. *Id.* "A judicial assessment of probable cause is thus necessary to guard against illegitimate interference with those rights." *Id.*

In *County of Riverside v. McLaughlin,* 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991), the Supreme Court defined the "promptness" requirement of *Gerstein. Willis,* 999 F.2d at 287. *McLaughlin* determined that a policy providing for a judicial probable cause determination within forty-eight hours of a suspect's arrest would generally satisfy the *Gerstein* promptness requirement. *Id.* Nonetheless, even if a probable cause determination is provided within forty-eight hours of arrest, such a hearing may still violate the constitution "if the arrested individual can prove that his or her probable cause determination was delayed unreasonably." *Id.* (citation omitted).

■ *McLaughlin* recognized that local governments should have some latitude given the practical realities of the criminal justice system. *Id.* at 288. For example, reasonable delays may occur from "[t]ransporting arrested persons from one facility to another, handling late-night bookings where no magistrate is readily available, [or] obtaining the presence of the arresting officer who may be busy processing other suspects or securing the premises of an arrest." *Id.* (citation omitted). Examples of unreasonable delays included "[d]elays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill-will against the arrested individual, or delay for delay's sake." *Id.* (citation omitted). If the period between an

arrest and the probable cause determination exceeds forty-eight hours, "the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance." *McLaughlin,* 500 U.S. at 57, 111 S.Ct. at 1670.

On this record, the Plaintiff received a prompt probable cause determination within forty-eight hours of his arrest on the charge of murder. The Plaintiff was appropriately arrested on that charge at approximately 9:10 a.m. on August 17, 1994, and the Plaintiff then appeared before a state judicial officer at approximately 9:00 a.m. on August 18, 1994, on a preliminary charge of murder. A probable cause determination was then made pursuant to Ind.Code § 35–33–7–1, and the Plaintiff was ordered held on the preliminary charge. The Plaintiff has failed to show that the twenty-four hour delay from the day of his arrest to when probable cause was found to exist was in any way unreasonable. This conclusion is unaltered even if the Court would deem that the Plaintiff's actual arrest occurred shortly after 6:00 a.m. on August 17, 1994, only three hours before the Police Station arrest. Therefore, the Defendants are entitled to summary judgment as a matter of law on this claim.

■ Moreover, there has been no showing that these Defendants were personally responsible for any delay in either establishing probable cause, or in filing the information and affidavit for probable cause. Since some degree of personal involvement is necessary in order to make out a § 1983 claim, *Rascon v. Hardiman,* 803 F.2d 269, 274 (7th Cir.1986), this too leads to the conclusion that summary judgement is warranted.

### D. The Official Capacity Claims

■ Although it is not entirely clear, the Court assumes for purposes of completing the record, and so as to liberally construe the Plaintiff's complaint, that he has alleged an official capacity claim against the Defendants. This assumption is bolstered by the fact that the Plaintiff has named City Police Chief Neil Moore as a Defendant, but asserts no allegation that Moore was personally involved in any of the events that give rise to the Plaintiff's claims. *See Rascon,* 803 F.2d at 274. Therefore, the Plaintiff must be suing Moore in his official capacity alone.

■ To sue someone in their official capacity is merely another way of bringing a cause of action against a municipality. *Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). To successfully assert an official capacity claim against a municipality the Plaintiff must show that the alleged constitutional deprivation was the result of an official policy, practice or custom of the municipality. *Monell v. New York City Dept. of Social Serv.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). Here, the Plaintiff makes no effort to establish that there was an official policy, practice or custom of arresting people without probable cause, or of prolonging their detention prior to a judicial probable cause determination.

The Plaintiff also makes no effort to establish an alternative basis for official capacity liability; that is, the Plaintiff has not shown that either his arrest or his detention was the result of an act by a policy-making official. *See Pembaur v. Cincinnati,* 475 U.S. 469, 481–83, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986). As noted *supra,* Moore was not involved at all in either the arrest or the detention issues, and therefore his policy making role is not implicated. There is no showing that any of the other named Defendants were policy makers for the City of Fort Wayne and therefore an official capacity claim cannot be made out on this basis either.

Finally, there is no showing that the City of Fort Wayne failed to train its deputies in obvious responsibilities. *See City of Canton, Ohio v. Harris,* 489 U.S. 378, 390 n. 10, 109 S.Ct. 1197, 1205 n. 10, 103 L.Ed.2d 412 (1989). Indeed, the record is devoid of any information as to what training is offered for municipal police officers regarding either arrests or the detaining of criminal suspects. Moreover, one isolated instance of an alleged deprivation does not give rise to a failure to train claim. *See Hirsch v. Burke,* 40 F.3d 900, 904–05 (7th Cir.1994) (citing *Canton,* 489 U.S. at 390–92, 109 S.Ct. at 1206–07).

Based on the foregoing, the official capacity claim, if one is alleged, must fail and summary judgment will be granted accordingly.

## V. CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part. Summary judgement is granted in favor of all defendants on all claims except as to the Plaintiff's claim involving his first arrest by Officers Jennings and Adam. While the Plaintiff's resulting damages from this alleged deprivation would appear to be exceedingly modest (arguably, not more than $1) the Plaintiff will be given an opportunity at trial to convince a jury that being arrested at 6:00 a.m., rather than at 9:00 a.m. on August 17, 1994, has resulted in something more than nominal damages.